COOK et al., Appellants,

v.

CITY OF CINCINNATI et al., Appellees.*

[Cite as *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930876.

Decided May 31, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1444, 656 N.E.2d 344.

*Condit & Dressing Co., L.P.A.,* and *Thomas W. Condit,* for appellants.

*Fay D. Dupuis,* City Solicitor, and *Julie F. Bissinger,* Assistant City Solicitor, for appellee city of Cincinnati.

*Hardin & Hill* and *Donald E. Hardin,* for appellees Ronald Flender and David Waddell.

---

MARIANNA BROWN BETTMAN, Judge.

This appeal arises out of events which took place on April 5, 1986, on or around the Margaret Sanger Center, a women's health clinic which, among other things, performed abortions. Plaintiff-appellant Dennis Cook ("Cook") was picketing at the Sanger Center that day along with his two minor children. Two Cincinnati police officers, Ronald Flender and David Waddell, were called to the Sanger Center to investigate a complaint of disorderly conduct. The facts thereafter are sharply disputed.

According to the affidavits of Cook and other abortion protestors present that day, Cook limited his protesting to the public sidewalk and was doing nothing more than speaking forcefully against abortion. According to the sworn statement of Debra Lee Jackson, the head escort for Planned Parenthood, who was also at the Sanger Center that day, Cook was on the private property of the clinic and was yelling loudly, directly into the window of the waiting room, and was disturbing and upsetting the patients. It was Jackson who called the police.

Cook was arrested and charged with disorderly conduct. He was removed from the scene. His children were left at the scene and later brought home by another protestor. In a bench trial in municipal court, Cook was subsequently acquitted of the disorderly conduct charge. Cook, his wife and their two children then filed a lawsuit, which is the subject of this appeal, against the city of Cincinnati ("the city") and officers Waddell and Flender ("the police officers") individually and in their official capacities.

Cook's lawsuit has several components. Cook and his family allege violations of Section 1983, Title 42, U.S.Code against the city, and against the police officers in their individual capacities ("the 1983 claims"). They also allege a number of state-law tort claims, particularly battery, false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress ("the state tort claims"). Mrs. Cook alleges loss of consortium as a result of all the foregoing.

The trial court granted summary judgment to all defendants on all claims. This appeal followed. Based upon the analysis set forth below, we affirm the judgment of the trial court.

We begin with Cook's first and third assignments of error, which involve the 1983 claims.

■ In his first assignment of error, Cook argues that the trial court erred in granting summary judgment to the police officers on his 1983 claims. We disagree. Section 1 of the Civil Rights Act of 1871, as amended, Section 1983, Title 42, U.S.Code, provides a remedy to persons whose federal rights have been violated by government officials. Section 1983 does not encompass official conduct that violates only state law; rather the statute is limited to deprivations of federal constitutional and statutory rights. *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309; *Shirokey v. Marth* (1992), 63 Ohio St.3d 113, 116, 585 N.E.2d 407, 410.

■ To establish a 1983 claim against an individual public official, two elements are required: (1) the conduct complained of must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of a federally protected right, either constitutional or statutory. *Gomez v. Toledo* (1980), 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572; *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456, 458; *Cooperman v. Univ. Surgical Assoc., Inc.* (1987), 32 Ohio St.3d 191, 199, 513 N.E.2d 288, 296; *Roe v. Hamilton Cty. Dept. of Human Serv.* (1988), 53 Ohio App.3d 120, 560 N.E.2d 238.

There is no question that Cook established the first prong of a 1983 claim. The police officers were obviously acting under color of state law when they arrested him. See *Gomez, supra*. Thus we must examine the second prong, namely, did the conduct of the police officers deprive Cook of a federally protected right?

■ Public officials, including police officers, who perform discretionary functions are entitled to be shielded from liability for civil damages in a 1983 claim as long as their conduct does not violate clearly established federal rights of which a reasonable person would have known. *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410–416. The test is an objective one. *Id.* This right is known in law as qualified immunity.

■ Qualified immunity in this context is a question of federal law. State law immunity has no application to a 1983 claim. *Cooperman*, 32 Ohio St.3d at 198, 513 N.E.2d at 296. Qualified immunity is a question of law, not fact, which can be properly determined by summary judgment. *Harlow, supra; Dominque v. Telb* (C.A.6, 1987), 831 F.2d 673, 676.

■ Although qualified immunity is an affirmative defense, the ultimate burden is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Wegener v. Covington* (C.A.6, 1991), 933 F.2d 390, 392. A defendant bears the initial burden of coming forward with facts to suggest that he was

acting within the scope of his discretionary authority during the incident in question. Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in the defendant's position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Id.*

We must first determine whether the police officers have met their initial burden in this case. The police officers were called to the scene in response to a specific complaint, from one of the volunteer escorts at the Sanger Center, that one of the protestors had moved onto the private property of the clinic and was screaming in the window, disturbing those inside. That protestor was identified as Dennis Cook.[1]

█ The existence of a factual dispute about what was happening at the scene does not defeat the officers' initial burden of showing that they were acting within their discretionary authority during the incident in question. The police were summoned to the scene of a demonstration, they arrived to find a volatile situation with conflicting reports of what was going on, they assessed the situation, and they chose a course of action. That is their job and what we, as a society, empower them to do. We thus hold that the police officers met their initial burden of showing that they were within the scope of their discretionary authority during the incident in question.

█ Once the police have met their initial burden, as here, the burden shifts to Cook to establish that the police officers' conduct violated a right so clearly established that any officer in the position of Waddell and Flender, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct. *Guercio v. Brody* (C.A.6, 1990), 911 F.2d 1179, 1184, citing with approval *Dominque, supra,* and *Ramirez v. Webb* (C.A.6, 1987), 835 F.2d 1153, 1156. In analyzing Cook's claim, we are guided by the caveat from the United States Supreme Court that "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs* (1986), 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 278–279.

---

1. At the trial on Cook's disorderly conduct charge, Officer Waddell testified that when he arrived at the Sanger Center, he observed Cook shouting in a loud voice, "[D]on't kill me, mom. Don't kill me, mom. They are killing babies in there." Waddell stated that Cook was no more than five feet from the windows of the Center and that he was definitely on Sanger Center property.

Waddell told Cook to keep the noise down and called a supervisor to the scene. Cook continued the shouting and Waddell placed him under arrest for disorderly conduct. Cook sent his son to his car to get his identification and while the son was gone, Waddell testified that Cook returned to the crowd and started shouting again. The police officers placed him under arrest.

■ In alleging a violation of clearly established rights, a plaintiff cannot simply make broad generalizations. In *Anderson v. Creighton* (1987), 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523, the Supreme Court wrote:

"The operation of this standard [referring to the objective legal reasonableness test in *Harlow* ], however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow.* Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified immunity by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. * * * It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful [citations omitted] but it is to say that in the light of pre-existing law the unlawfulness must be apparent. [Citations omitted; emphasis added.]" *Id.* at 639–640, 107 S.Ct. at 3038–3039, 97 L.Ed.2d at 529–531.

From *Anderson* we glean that the plaintiff must be specific about the rights claimed to be violated in light of clearly established law. In *Anderson,* the plaintiff alleged simply that his Fourth Amendment rights were violated, and the Supreme Court held that was not good enough. See, also, *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 93, 637 N.E.2d 306, 310.

■ Cook has alleged violations of his rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution.[2] As pleaded, that is too generalized for Cook to prevail. See *Poe v. Haydon* (C.A.6, 1988), 853 F.2d 418, 422.

In his arguments below and to this court, Cook more narrowly discusses his First and Fourth Amendment rights within the context of reasonable time, place and manner restrictions on speech, such as picketing on the sidewalk. As he

---

2. Cook also pleaded, but apparently abandoned, a claimed violation of his Fifth Amendment rights.

recognizes, the burden is upon him, not the police, to show that the law regarding these rights was clearly established at the time of the alleged violation, which, in this case, was April 1986. On this point, the United States Court of Appeals for the Sixth Circuit, whose opinions we heavily rely on in this case in this area of federal law, has written:

"Our review of the Supreme Court's decisions and of our own precedent leads us to conclude that, in the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals, or itself." *Ohio Civ. Serv. Emp. Assn. v. Seiter* (C.A.6, 1988), 858 F.2d 1171, 1177.

As state courts have concurrent subject-matter jurisdiction with federal courts over 1983 claims, we are also free to look at any pertinent state authority interpreting federal law in this context. *State ex rel. Carter v. Schotten, supra,* 70 Ohio St.3d at 92, 637 N.E.2d at 309, fn. 2, citing *Cooperman, supra,* 32 Ohio St.3d at 191, 513 N.E.2d at 288.

The First Amendment has never conferred an absolute right to engage in expressive conduct whenever, wherever, or in whatever manner a speaker may choose. *Cincinnati v. Thompson* (1994), 96 Ohio App.3d 7, 15, 643 N.E.2d 1157, 1163, citing *Greer v. Spock* (1976), 424 U.S. 828, 836, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505, 513–514; *Adderley v. Florida* (1966), 385 U.S. 39, 48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149, 155–156.

Reasonable time, place, and manner regulations on the use of a public place for expressive activity are constitutionally permissible. *Grayned v. City of Rockford* (1972), 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222. In *Grayned,* the court upheld that part of a city antinoise ordinance prohibiting a person, while on grounds adjacent to a building in which a school is in session, from willfully making a noise or diversion that disturbs the peace and order of the school session. Further, in 1977 and 1978, the United States Supreme Court recognized the legitimacy of noise control around hospitals and medical facilities during surgery and recovery periods. *Beth Israel Hosp., Inc. v. Natl. Labor Relations Bd.* (1978), 437 U.S. 483, 98 S.Ct. 2463, 57 L.Ed.2d 370; *Natl. Labor Relations Bd. v. Baptist Hosp., Inc.* (1978), 442 U.S. 773, 99 S.Ct. 2598, 61 L.Ed.2d 251.

At best, Cook would have this court accept the proposition that in April 1986, he had an absolute right to engage in any kind of expressive conduct or speech around an abortion clinic, as long as he stayed on the sidewalk. He cites no clearly established law for this proposition and it is his burden in a Section 1983 claim to do so. To the contrary, the "contours of the law" in this contentious area were not clearly settled until 1994 in *Madsen v. Women's Health Ctr., Inc.* (1994), 512 U.S. ——, 114 S.Ct. 2516, 129 L.Ed.2d 593. Thus, Cook's claims that in April

1986, two police officers acting under color of law violated his clearly established federal rights under the First and Fourth Amendments must fail. The police officers were entitled to qualified immunity, and summary judgment was properly granted to Flender and Waddell on Cook's 1983 claims.

As to the Fourteenth Amendment claims of Cook and his children,[3] he argues that the conduct of the defendants was "a conscience-shocking abuse of police power, thereby violating the substantive component of the [D]ue [P]rocess [C]lause of the Fourteenth Amendment * * *." In support of this contention, Cook cites one case from the United States Court of Appeals for the Seventh Circuit to prove clearly established law as of April 5, 1986, on this issue.

As stated above, the United States Court of Appeals for the Sixth Circuit has stated that a district court must find binding precedent through the cases of the Supreme Court, its court of appeals or itself. Further, it stated that:

"[A] mere handful of decisions of other circuit and district courts, which are admittedly novel, cannot form the basis for a clearly established constitutional right in this circuit." *Ohio Civ. Serv. Emp. Assn., supra,* 858 F.2d at 1177–1178.[4]

We thus hold that Cook has failed to establish clearly existing law on this issue, as well as on his First and Fourth Amendment claims. The United States Supreme Court has stated that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth* (1985), 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 424–425. Consequently, the trial court did not err in granting summary judgment to police officers Flender and Waddell. Cook's first assignment of error is overruled.

 Turning now to the 1983 claims against the city, we note first that the parties agree that the trial court was incorrect in its reason for finding in favor of the city on this issue. Municipalities are not entitled to a qualified immunity defense in a 1983 claim. *Monell v. New York City Dept. of Social Serv.* (1978), 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611; *Owen v. City of Independence* (1980), 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673. Municipalities may be liable for damages under Section 1983 when a deprivation of federal rights results specifically from a city policy or custom. *Monell, supra; Meyers v. Cincinnati*

---

3. While it is not completely clear whether Cook is bringing the claims of his children on their behalf or whether the claims are the parents' claims as to the children, we will interpret the claims as being brought on behalf of the children.

4. In *Eugene D. v. Karman* (C.A.6, 1989), 889 F.2d 701, 708, the Court of Appeals for the Sixth Circuit wrote that "our court will not be easily swayed by the decisions of circuit and district courts other than our own when determining whether a constitutional right has been clearly established in this circuit."

**90**

(C.A.6, 1994), 14 F.3d 1115; *Nungester v. Cincinnati* (1995), 100 Ohio App.3d 561, 654 N.E.2d 423. Since Cook failed to establish any violation of his constitutional rights by the police officers, there is no basis on which to find a Section 1983 violation by the city. Accordingly, the trial court properly granted summary judgment to the city, even if for the wrong reason. A reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof. *State ex rel. Carter, supra,* 70 Ohio St.3d at 92, 637 N.E.2d at 309. Cook's third assignment of error is overruled.

▆ In his second assignment of error, Cook argues that the trial court erred by granting summary judgment to Officers Flender and Waddell with respect to his state tort claims which are set forth in the third, fourth, fifth and sixth counts.[5] Cook asserts that the officers are not subject to immunity under R.C. Chapter 2744,[6] that the evidence showed that the officers acted with malicious purpose and bad faith or in a wanton or reckless manner, and that he has provided evidence to establish the elements of the state tort claims. We are not persuaded.

▆ The employees of a political subdivision are immune from liability pursuant to R.C. 2744.03(A)(6) unless the employee's acts or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner." In other words, the Ohio legislature has determined that a police officer, for example, cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established. We therefore begin with a presumption of immunity.

▆ In *Cole v. Crowthers* (Oct. 12, 1994), Hamilton App. No. C–930767, unreported, 1994 WL 556958, we discussed these exceptions to immunity. "Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. See, also, *Jackson v. Butler Cty. Bd. of Commrs.* (1991), 76 Ohio App.3d 448, 602 N.E.2d 363. "Bad faith" involves a dishonest purpose, conscious wrongdoing, the

---

**5.** The trial court found that the police officers, acting on behalf of the city, were immune on the state tort claims. While it is not clear whether the Cooks also alleged any tort claims against the city itself, no error is assigned as to any immunity ruling in favor of the city. We thus consider the state tort claims to be alleged solely against the police officers as employees of the city.

**6.** We agree with the Cooks that the trial court relied on the wrong provision of R.C. Chapter 2744 in granting immunity to the officers. R.C. 2744.03(A)(6)(b) covers the issue of immunity of individual employees. *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35. Nevertheless, as stated *supra,* the trial court can be right for the wrong reason. *State ex rel. Carter, supra.* As none of the exceptions to immunity listed in R.C. 2744.03(A)(6) has been established, the officers were entitled to immunity.

breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. *Jackson, supra.*

In *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35, the court examined the standard that it has used to demonstrate wanton misconduct, stating that wanton misconduct is the failure to exercise any care whatsoever, citing *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus. The court went on to state that "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Fabrey, supra,* at 356, 639 N.E.2d at 35, citing *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96–97, 55 O.O.2d 165, 166–167, 269 N.E.2d 420, 422. Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury. *Fabrey, supra.*

When a motion for summary judgment is made, the burden of showing that there is no genuine issue of material fact rests with the moving party. To meet that burden, the moving party is not obligated to negate every claim of the nonmoving party, but it must demonstrate the basis of its assertion that there is no genuine issue of fact. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114, 526 N.E.2d 798, 801.

In turn, to overcome a motion for summary judgment, the nonmoving party must demonstrate the existence of a factual dispute and must produce evidence on any issue for which that party bears the burden of production at trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 324, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275–276 (adopted by the Ohio Supreme Court in *Wing v. Anchor Media, Ltd. of Texas* [1991], 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus). The Cooks have simply not met this burden. The mere fact that the disorderly conduct charge was later dismissed by the trial court does not make the arrest unlawful, nor is it enough to transform the officers' conduct into action which was malicious, wanton, reckless, or in bad faith. Even if we were to conclude that the officers were negligent in their actions, which this record does not demonstrate, the General Assembly has declared that mere negligence should not give rise to personal liability. See *Fabrey, supra,* 70 Ohio St.3d at 357, 639 N.E.2d at 36.

We hold that Cook has not produced sufficient evidence on the state tort claims to rebut the presumption of immunity. Consequently, the trial court correctly granted summary judgment to the police officers on all the state tort claims. The second assignment of error is overruled.

Moreover, because we hold that Cook's claims fail, his wife's claim for loss of consortium must fail also.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HILDEBRANDT, P.J., and DOAN, J., concur.