**WOOTON, Appellant,**

v.

**VOGELE, Appellee.***

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010140.

Decided Dec. 28, 2001.

---

* Reporter's Note:  An appeal to the Supreme Court of Ohio was not allowed in 95 Ohio St.3d 1437, 2002-Ohio-2084, 766 N.E.2d 1002.

William M. Gustavson, for appellant.

Michael K. Allen, Hamilton County Prosecuting Attorney, Gordon M. Strauss and Thomas E. Deye, Assistant Prosecuting Attorneys, for appellee.

---

Per Curiam.

{¶ 1}  Plaintiff-appellant, Clay Wooton, appeals from the trial court's entry of summary judgment in favor of defendant-appellee, James A. Vogele.  For the following reasons, we affirm the judgment of the trial court.

## Facts and Proceedings

{¶ 2}  In the early morning hours on July 5, 1997, Clay Wooton was involved in a physical dispute with his girlfriend, LaVonne Scoggins, at their residence. Both Scoggins and Wooton had been drinking alcohol.  As a result of the dispute, Scoggins reported the domestic violence to the Deer Park police.  Wooton was subsequently arrested, charged with domestic violence, and incarcerated.

{¶ 3}  On July 7, 1997, Wooton was arraigned.  Prior to arraignment, he had been assigned an assistant public defender, James Vogele ("Vogele"), to represent him.  Vogele had interviewed Wooton about the domestic-violence charges. At the arraignment, Wooton pleaded not guilty, and the court set a bond of $5,000 at 10 percent.  On the judge's docket sheet, but not on the entry setting bond, the court added EMU Juris Monitor as a condition of bond.  Pursuant to this condition, a Juris Monitor officer was to elicit Scoggins's consent to the use of protective electronic equipment prior to Wooton's release on bond.

{¶ 4}  The record shows that no surety posted the required bond and that Wooton remained in jail for twenty-four days.  During this time, Wooton attempted to contact Vogele to have him take pictures of his bruises and prepare his defense.  Wooton's father wrote two letters to Vogele and called him, asking Vogele to meet with his son.  Vogele did not contact Wooton until the day of trial. At some point prior to trial, a relative of Wooton informed Vogele that Wooton's bond was subject to Juris Monitor, and that Scoggins's consent was needed before Wooton could be released on bond.

{¶ 5}  On July 29, 1997, the date of trial, Vogele met with Wooton and discussed the case with him.  Vogele spoke to the arresting police officer about Wooton's statement to the police, and he interviewed Scoggins.  Scoggins was reluctant to proceed, but the police officer stated that he intended that the prosecution go forward.

{¶ 6}  After consulting with Vogele, Wooton, in open court and without objection, waived his right to a jury trial and pleaded no contest to a lesser

charge. The trial court found him guilty, fined him, gave him probation, and credited him for the twenty-four days he had already spent in jail.

{¶ 7} Thereafter, Wooton retained a new attorney and filed a motion to withdraw his plea of no contest. Attached to the motion were two affidavits: one from Scoggins and one from Wooton. Scoggins's affidavit recanted her statements that she had been the victim of domestic violence. Wooton's affidavit stated that he had pleaded no contest to the lesser charge because Vogele had provided ineffective assistance of counsel.

{¶ 8} On October 8, 1997, the trial court held a hearing in chambers on Wooton's motion to withdraw his plea. The court permitted Wooton to withdraw the plea and to plead not guilty to the reinstated charge of domestic violence.

{¶ 9} A bench trial was held on February 15, 1998. Scoggins refused to testify against Wooton. At the close of the state's case, Wooton moved for an acquittal under Crim.R. 29. The court granted the motion and dismissed the reinstated charge of domestic violence.

{¶ 10} On June 10, 1998, Wooton filed a legal-malpractice action against Vogele. Vogele moved for summary judgment, arguing that he was immune from liability under R.C. Chapter 2744, the Political Subdivision Tort Liability Act, and that no malpractice had occurred. In an opposing memorandum, Wooton argued that Vogele was not entitled to statutory immunity and that there was a factual basis for the malpractice claim. On February 15, 2001, the trial court entered summary judgment and dismissed Wooton's claim on immunity grounds alone. It is from that judgment that Wooton now appeals, asserting one assignment of error.

## Standard of Review

{¶ 11} An appellate court's review of a trial court's ruling on summary judgment is de novo.[1] Under Civ.R. 56(C), summary judgment is proper if (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence viewed most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.[2]

**1.** See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245.

**2.** See *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.

{¶ 12} The moving party bears the initial burden of informing the trial court of the basis for the motion, and of establishing that no genuine issue of material fact remains to be litigated.[3] If the moving party satisfies this initial burden, the opposing party has a reciprocal burden to set forth specific facts demonstrating a genuine issue for trial.[4] The opposing party must respond with affidavits or similar evidentiary materials to meet the reciprocal burden.[5] "[I]f the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."[6]

## Analysis

{¶ 13} In his sole assignment of error, Wooton argues that the trial court erred in granting summary judgment to Vogele on the legal-malpractice claim. Wooton asserts that Vogele was not subject to immunity under R.C. Chapter 2744 for two reasons. First, Wooton contends that Vogele's duty to Wooton arose by virtue of the attorney/client relationship, which is governed by the Code of Professional Responsibility, and that the duty was independent of Vogele's employment as an assistant public defender. Second, Wooton argues that Vogele was not entitled to immunity because he had presented evidence to show that Vogele had acted with malicious purpose, in bad faith, or in a wanton or reckless manner while representing him.

{¶ 14} In response, Vogele argues that he was entitled to immunity under R.C. Chapter 2744 because he was an employee of a political subdivision acting within the course and scope of that employment when he represented Wooton. The fact that he may have been subject to sanctions under the Code of Professional Responsibility, Vogele argues, was a separate matter that had no bearing on his right to statutory immunity. He urges this court to apply the three-tiered statutory analysis for determining whether a political subdivision is immune from liability, discussed by the Ohio Supreme Court in *Cater v. Cleveland*,[7] to determine his own statutory immunity. Alternatively, he argues that Wooton's complaint is grounded in negligence, and that there is no evidence to show that his representation was malicious, in bad faith, or wanton or reckless.

---

3. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274.

4. See id. at 293, 662 N.E.2d at 274.

5. See id., citing Civ.R. 56(E).

6. Id.

7. (1998), 83 Ohio St.3d 24, 697 N.E.2d 610.

■ {¶ 15} We agree with Vogele that the trial court properly granted summary judgment to him. But the trial court relied on the wrong part of R.C. Chapter 2744 in granting immunity. The analysis discussed in *Cater,* supra, does not apply to the immunity of an employee. In this case, R.C. 2744.03(A)(6) contains the proper standard for determining the immunity of Vogele as an "employee."[8] Nevertheless, "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof."[9] Because Wooton failed to establish below that Vogele's conduct was malicious, in bad faith, or wanton or reckless, Vogele was entitled to immunity under R.C. 2744.03(A)(6).

■ {¶ 16} Hamilton County is a political subdivision of the state of Ohio.[10] R.C. 2744.01(C)(2)(v) defines "[t]he provision of public defender services by a county" as a governmental function. As Vogele is an employee of the Hamilton County Public Defender's Office,[11] his tort liability is limited by the immunity conferred on political subdivisions and their employees by R.C. Chapter 2744.

■ {¶ 17} The liability of political subdivision employees is governed by R.C. 2744.03.[12] R.C. 2744.03(A)(6) provides that an individual employee is immune from liability in performing his job unless one of three exceptions applies: (1) his acts or omissions are manifestly outside the scope of his employment; (2) his acts or omissions are malicious, in bad faith, or wanton or reckless; or (3) liability is expressly imposed upon the employee by another section of the Revised Code. Thus, an employee of a political subdivision is presumed immune unless one of these exceptions to immunity is established.[13]

■ {¶ 18} Vogele moved for summary judgment on the basis of individual immunity from liability. In order to overcome Vogele's presumption of immunity, Wooton had to show that an exception to immunity existed. Wooton argued that Vogele was not entitled to immunity because genuine issues of material fact remained as to whether Vogele had acted with malicious purpose, in bad faith, or in a wanton or reckless manner when representing him. In support of this

---

8. See *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35.

9. See *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309.

10. See R.C. 2744.01(F).

11. See R.C. 2744.01(B).

12. See *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 90 91, 658 N.E.2d 814, 820–821, citing *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35.

13. See *Cook,* supra, at 90, 658 N.E.2d at 820–821.

contention, Wooton cited *Fabrey v. McDonald Police Dept.,*[14] where the Ohio Supreme Court noted that the issue of wanton misconduct is generally a question of fact for the jury. But, where, as in *Fabrey,* the record does not contain evidence that the employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner, a trial court correctly grants summary judgment.[15]

{¶ 19} Malice has been defined as the willful and intentional design to do injury.[16] "Bad faith" embraces more than bad judgment or negligence.[17] It imports a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."[18] Wanton misconduct has been defined as the failure to exercise any care whatsoever.[19] The Ohio Supreme Court has held that "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor."[20] Such perversity requires that the actor be conscious that his conduct will, in all likelihood, result in an injury.[21] Likewise, an individual acts recklessly when he or she, bound by a duty, does an act or intentionally fails to do an act, knowing, or having reason to know of, facts that would lead a reasonable person to realize not only that there is an unreasonable risk of harm to another, but also that such risk is substantially greater than that which is necessary for negligence.[22]

{¶ 20} While the evidence presented below may have created issues of fact as to whether Vogele had acted negligently in his representation of Wooton,

---

14. (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35.

15. Id.

16. See *Garrison v. Bobbitt* (1999), 134 Ohio App.3d 373, 384, 731 N.E.2d 216, 224.

17. Id., citing *Parker v. Dayton Metro. Hous. Auth.* (May 31, 1996), Montgomery App. No. 15556, 1996 WL 339935,.

18. Id.; *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 454, 602 N.E.2d 363.

19. See *Fabrey,* supra, at 356, 639 N.E.2d at 35, citing *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus.

20. See id., citing *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96–97, 55 O.O.2d 165, 166, 269 N.E.2d 420, 422.

21. See id.

22. See *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, 708; *Garrison v. Bobbitt* (1999), 134 Ohio App.3d 373, 384, 731 N.E.2d 216, 224.

it did not demonstrate what was necessary to show a perversity reflecting that Vogele was conscious that his conduct would, in all likelihood, result in an injury.

{¶ 21} It is undisputed that, after being assigned to Wooton, Vogele interviewed him and learned about his version of events and about the lack of witnesses to the altercation. Vogele viewed Wooton's injuries and, based upon his twenty-seven years of defending domestic-violence clients, found them to be insignificant. At the arraignment, Vogele obtained a reasonable bond of $5,000 at 10 percent. The trial court added EMU Juris Monitor as a condition of the bond without Vogele's knowledge. After the arraignment, Vogele went to the assignment commissioner's office and a jury trial was set on the trial court's first available date.

{¶ 22} Wooton's aunt averred that she attempted to post bail for her nephew, bringing $520 to the clerk's office. But in order to post a 10 percent cash bond, the clerk's office had to qualify the surety for the entire amount of the bond principal. There is no evidence in the record indicating that the clerk's office qualified Wooton's aunt for the full amount. Further, even assuming that Wooton's aunt would have qualified, the record contains no evidence indicating that Scoggins would have consented to Wooton's release on bond, or that Vogele had any knowledge of such consent.

{¶ 23} The record contains no evidence indicating that Vogele was aware or should have been aware that the charges against Wooton would be dismissed. The arresting officer told Vogele that Scoggins's injuries were not consistent with Wooton's self-defense theory. The officer referred specifically to an injury that looked as if Scoggins had received repeated facial blows from a fist. While the record does contain factual disputes concerning what Scoggins told Vogele just prior to trial, it is undisputed that the arresting officer told Vogele that the police fully intended to go forward with Wooton's prosecution, even without Scoggins's testimony. Further, there is no evidence that, on the day of Wooton's trial, Scoggins appeared in court with an attorney or took any affirmative steps to recant her signed statement to the police that Wooton had assaulted her.

{¶ 24} Wooton cites Vogele's failure to procure street clothes for him on the day of trial as another example of Vogele's recklessness in representing him. The record indicates, however, that Wooton never complained to Vogele about his prison garb. Producing the defendant in jail clothes in the hope of eliciting sympathy from the jury is not an uncommon defense tactic, particularly in a case such as this where self-defense is alleged.[23]

---

**23.** See, generally, *Estelle v. Williams* (1976), 425 U.S. 501, 508, 96 S.Ct. 1691, 1695, 48 L.Ed.2d 126, 133.

{¶ 25} Finally, Wooton argues that Vogele was unprepared for trial. While we do not condone Vogele's trial preparation, in light of his experience and the facts of the underlying case, we cannot say that his preparation was wanton or reckless.

{¶ 26} With the evidence in this record viewed in the light most favorable to Wooton, reasonable minds could come only to the conclusion that Vogele was immune from any civil liability arising from his representation of Wooton. Thus, the trial court did not err in granting summary judgment to Vogele on the malpractice claim. Accordingly, we overrule Wooton's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

SUNDERMANN, P.J., WINKLER and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.