THORP et al., Appellants,

v.

STRIGARI, Appellee.

[Cite as *Thorp v. Strigari,* 155 Ohio App.3d 245, 2003-Ohio-5954.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030193.

Decided Nov. 7, 2003.

Newman & Meeks Co., L.P.A., and Robert B. Newman, for appellants.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Thomas E. Deye, Assistant Prosecuting Attorney, for appellee.

GORMAN, Judge.

{¶ 1} The plaintiffs-appellants, Sara Thorp, Carolyn Tyson, Gretchen Scronce, and Sara Runyun ("the Thorp appellants"), appeal from the trial court's order granting summary judgment in favor of the defendant-appellee, Louis F. Strigari, the Hamilton County Public Defender, on their claims for legal malpractice. The trial court entered judgment because Strigari was immune from suit pursuant to R.C. Chapter 2744, the Political Subdivision Tort Liability Act. In their two assignments of error, the Thorp appellants now contend that R.C. Chapter 2744's grant of immunity violates the equal-protection guarantees and the right-to-a-remedy provision of the Ohio Constitution by denying them the fundamental right to bring their malpractice action against an attorney employee of a political subdivision. They allege that "the ability to sue for malpractice is the only means indigent defendants have to enforce their right to effective assistance of counsel." Appellants' Brief at 8. They also contend that if this court reverses on the immunity issue, factual issues regarding Strigari's alleged negligence remain for resolution at trial. We hold that R.C. Chapter 2744, which provides that, as employees of a political subdivision, public defenders are immune from claims of negligence, is constitutional and that Strigari is immune from the Thorp appellants' malpractice claims.

### The Protest and the Pleas

{¶ 2} The Thorp appellants were students at Earlham College in Richmond, Indiana. On Saturday, November 18, 2000, they traveled to Cincinnati and took

part in a protest against the Trans–Atlantic Business Dialogue, a meeting of executives of international corporations that had convened in Cincinnati to discuss international trade. During the protest, they were arrested for disorderly conduct and confined in the Hamilton County Justice Center. On Monday morning, Strigari learned that protesters, some charged with felonies and some with misdemeanors, were detained for arraignment in the lockup on the sixth floor of the county courthouse.

{¶ 3} About an hour before their arraignments, Strigari and two assistant public defenders met with the detainees in the lockup. The Thorp appellants' complaint against Strigari for legal malpractice stated that " * * * Strigari informed [them] that he had worked out a plea agreement with the Judge and that if all of the group pleaded no contest, the sentence would consist of time already served prior to trial * * * [but] * * * it was an 'all or nothing deal.' " At the arraignment, Strigari appeared as counsel for the Thorp appellants. Each entered a no-contest plea to the offense of disorderly conduct, a fourth-degree misdemeanor. The municipal court judge found each guilty and imposed a sentence of credit for time served and no fine, and remitted the court costs.

### The Post–Trial Motion to Vacate the Pleas

{¶ 4} Almost three months later, the Thorp appellants filed motions to withdraw their no-contest pleas. They alleged that Strigari had given them insufficient information to enter their pleas knowingly and intelligently. They further maintained that Strigari had coerced them into pleading no contest. At the hearing on the motions, the municipal court judge who had convicted them of disorderly conduct, after listening to their statements, determined that their pleas had been knowingly and voluntarily entered and denied the motions to withdraw the pleas. They appealed, and this court affirmed the judgments. See State v. Tyson (Oct. 17, 2001), 1st Dist. Nos. C–010224, C–010225, C–010226, and C–010227.

### The Thorp Appellants' Legal Malpractice Claims

{¶ 5} On October 11, 2002, the Thorp appellants sued Strigari for unspecified damages caused by his negligent and reckless representation and for other relief "as is just and necessary." They did not sue the Hamilton County Public Defender's Office or the county commissioners. "To state a cause of action for legal malpractice arising from criminal representation, a plaintiff must allege (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." Krahn v. Kinney (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058, syllabus; see, also, Vahila v. Hall (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, syllabus. Contrary to the law in many other jurisdictions, the Supreme Court of Ohio has held that a criminal defendant may

recover against his attorney for malpractice without obtaining postconviction relief or proving his innocence. See *Krahn v. Kinney;* but, see, *Peeler v. Hughes & Luce* (Tex.App.1993), 868 S.W.2d 823, 831 (listing the majority of jurisdictions that require postconviction relief on the basis of ineffective assistance of counsel as a prerequisite to a legal malpractice claim).

{¶ 6} The Thorp appellants alleged in their complaint that Strigari had breached his duties (1) to inform them of the conflicts and potential conflicts of representing them as a group; (2) to investigate each of their cases; (3) to separately evaluate each case; (4) to advise each Thorp appellant in confidence of the merits, options, and possible consequences of her case; and (5) to present them with more than one choice.

{¶ 7} Strigari moved for summary judgment on the Thorp appellants' legal malpractice claims, attaching various materials including his affidavit. Strigari argued that, as an employee of a political subdivision, he was immune from suit pursuant to R.C. 2744.03(A)(6). In response, the Thorp appellants submitted the transcript of the hearing on their motions to vacate their no-contest pleas and the affidavit of a local criminal defense attorney who stated that Strigari's actions had deviated from the appropriate standard of care.

{¶ 8} Yet the transcript of the hearing to vacate the pleas reveals that the municipal court judge found that the Thorp appellants' no-contest pleas had been knowingly and voluntarily entered, which was at odds with a claim for damages caused by legal negligence. The Thorp appellants testified that Strigari "had worked a deal" with the judge. In his affidavit, Strigari denied any sort of negotiated plea. Although the transcript of the Thorpe appellants' plea and sentence was not filed, at the hearing on their motion to vacate their pleas, the municipal court judge made no mention of a negotiated plea. The transcript of the hearing suggests that the municipal court judge chose the sentence because he "felt some compassion" for them. Sara Thorp's own statement to the trial court was antithetical to her contention that Strigari's negligence had caused their claimed injuries. She told the trial court at the hearing on the motion that "all of the women entered a plea of 'no contest' *as the only way to protect ill and threatened members of our group,* and without having all the information we rightfully deserved." (Emphasis added.)

{¶ 9} On February 26, 2003, the trial court granted Strigari's motion for summary judgment on the basis of immunity and entered judgment in his favor against the Thorp appellants. This appeal followed.

### De Novo Review Under Civ.R. 56

{¶ 10} We review the granting of summary judgment de novo. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243. Under Civ.R. 56(C),

summary judgment is proper when no genuine issue of material fact remains to be litigated, and the moving party is entitled to judgment as a matter of law. Immunity from a civil suit presents a purely legal issue that may properly be determined by summary judgment. See *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862; see, also, *Piphus v. Blum* (1995), 108 Ohio App.3d 218, 224, 670 N.E.2d 518. The interpretation of the constitutionality of a statute also presents a question of law. See, e.g., *Andreyko v. Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, 791 N.E.2d 1025, at ¶ 11, appeal accepted for review in 100 Ohio St.3d 1430, 2003-Ohio-5396, 797 N.E.2d 511.

{¶ 11} When, as here, the party moving for summary judgment discharges its initial burden of identifying the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims and demonstrates that it is otherwise entitled to judgment as a matter of law, the nonmoving party has the reciprocal burden of producing evidence on the issues for which it bears the burden of production at trial. See Civ.R. 56(C); *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

{¶ 12} We note that the Thorp appellants did not seek declaratory relief in the trial court pursuant to R.C. Chapter 2721. Instead, they first raised the equal-protection issue in one paragraph of their complaint in anticipation of Strigari's motion for summary judgment, and then fully argued the matter in their memorandum in opposition to Strigari's motion. We have recently held that "there is no rule of general applicability requiring a party to serve the Attorney General with notice in order to vest the trial court * * * with jurisdiction to declare a statute unconstitutional." *In re Cameron*, 153 Ohio App.3d 687, 2003-Ohio-4304, 795 N.E.2d 707, at ¶ 17, relying on *Cleveland Bar Assn. v. Picklo*, 96 Ohio St.3d 195, 2002-Ohio-3995, 772 N.E.2d, 1187. While we question the wisdom of adjudicating an issue affecting the financial integrity of political subdivisions without the participation of the Attorney General, *Picklo* informs us that there is no jurisdictional bar to going forward with a review of the constitutional issue in this appeal.

### What Level of Scrutiny Applies to the Thorp Appellants' Claims?

{¶ 13} In the resolution of a motion for summary judgment, the substantive law governing the claims or defenses at issue identifies which factual disputes are material and whether the moving party is entitled to judgment as a matter of law. See *Gross v. Western–Southern Life Ins. Co.* (1993), 85 Ohio App.3d 662, 666–667, 621 N.E.2d 412, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202. On appeal, the Thorp appellants raise two related but separate constitutional arguments. The determination of the appro-

priate substantive law, in this instance, the proper level of judicial scrutiny, is critical to the resolution of the Thorp appellants' first constitutional argument.

{¶ 14} They assert that R.C. Chapter 2744 deprives them of the equal protection of the law guaranteed by Section 2, Article I of the Ohio Constitution, because the immunity statutes impermissibly restrict a fundamental right of some indigent criminal defendants. The statutes grant a presumption of immunity from legal malpractice lawsuits to the attorney employees of the public defender's office. The statutes do not similarly restrict a criminal defendant's ability to bring a malpractice suit against a court-appointed or a privately retained attorney. This restriction, the Thorp appellants argue, negates their fundamental right to the effective representation of counsel.

{¶ 15} In determining whether a legislative enactment violates the Equal Protection Clauses of the federal and Ohio Constitutions, this court applies different levels of scrutiny to different types of restrictions. See *Andreyko v. Cincinnati* at ¶ 13; see, also, *State v. Williams* (2000), 88 Ohio St.3d 513, 530, 728 N.E.2d 342. All statutes are subject to at least rational-basis review, which requires that a statutory classification be rationally related to a legitimate government purpose. See *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, at ¶ 13. When, however, a legislative enactment "distribute[s] benefits or burdens in a manner inconsistent with fundamental rights," it is subject to the highest level of judicial scrutiny.[1] Tribe, American Constitutional Law (2d Ed.1988) 1454, Section 16–7; see *State v. Thompson* at ¶ 13. This strict-scrutiny evaluation demands that the legislative restriction "be narrowly tailored to serve a compelling state interest." *State v. Thompson* at ¶ 13. The Ohio Constitution provides essentially the same safeguards as the United States Constitution. See *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d at 353, 639 N.E.2d 31.

{¶ 16} Thus, the Thorp appellants urge this court to recognize that the immunity statute "impinges upon the fundamental rights * * * to effective representation" in a criminal case. Appellants' Brief at 7. Without citation to any authority, they maintain that they cannot protect their constitutional right to the effective assistance of counsel without the ability to sue their counsel for malpractice. The right to sue is necessary, they claim, as "the only means" that defendants have to maintain standards of professional competency among employee attorneys and to provide redress for defendants injured by their counsel's

---

1. Although the analysis to determine the validity of legislative restrictions on a fundamental right appears to have recently changed from strict scrutiny to the reasonableness of the legislation in *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, we believe that the rule in *Klein* is limited to cases in which the state's interest relates to the right to bear arms under Section 4, Article I of the Ohio Constitution.

negligence. Id. at 8. They also note that persons deprived of other constitutionally protected rights have "a corollary right of enforcement by means of a civil action" pursuant to Section 1983, Title 42, U.S.Code. Id. But the Thorp appellants have confused the fundamental right to counsel with one of the several means available to enforce that right.

{¶ 17} Their right to the effective assistance of counsel supplied to them at no cost is undisputed. See *Gideon v. Wainwright* (1962), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; see, also, *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. But their right to sue their counsel for negligent representation is not enumerated in either Constitution. Like other claims for relief sounding in tort, it is a creature of the common law and has no constitutionally protected status of its own. "For when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law." *Ferri v. Ackerman* (1979), 444 U.S. 193, 198, 100 S.Ct. 402, 62 L.Ed.2d 355. Thus, any "right" to bring a legal malpractice action, beyond the right afforded by the state, can be enforceable only if it is derived from and a necessary ingredient of the fundamental right to counsel.

{¶ 18} There is a presumption that the right to appointed counsel "exist[s] only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dept. of Social Services* (1981), 452 U.S. 18, 25, 101 S.Ct. 2153, 68 L.Ed.2d 640. It is "the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments' right to counsel in criminal cases," that triggers the constitutional protections. Id. Thus as a litigant's interest in his personal liberty diminishes, so does his right to employ the full panoply of constitutional guarantees surrounding the right. As the civil negligence action here does not seek personal freedom but rather monetary damages, the heightened constitutional protection afforded a fundamental right is not available to the Thorp appellants.

{¶ 19} Nor is a malpractice lawsuit the only means to vindicate the right to effective representation by counsel. Deviations from the professional standards by attorney employees may be remedied, as for any other officer of the court, by a disciplinary action brought pursuant to Gov.Bar R. V. The specter of disciplinary proceedings, like the threat of monetary loss, is a considerable incentive for counsel to provide adequate representation.

{¶ 20} As the Thorp appellants note, a wrongful conviction caused by the ineffective assistance of counsel is the greatest harm to befall a criminal defendant. A negligence lawsuit is not, however, the only remedy for this harm. It

may be addressed and a wrongful conviction overturned by post-trial motion, on direct appeal, or in a collateral attack on the conviction brought in a petition for postconviction relief or in a state or federal habeas corpus action. See R.C. 2953.21; see, also, Section 2254, Title 28, U.S.Code. An unjust conviction also may be invalidated entirely by the pardon powers conferred by R.C. 2967.03. While these remedies do not provide monetary relief to a wrongfully convicted defendant, freedom from criminal conviction is not an insubstantial remedy.

{¶ 21} A criminal accused may seek monetary damages for deprivations of other fundamental or enumerated constitutional rights, particularly those secured by the Fourth, Fifth, and Eighth Amendments. The Civil Rights Act of 1871, as amended, Section 1983, Title 42, U.S.Code, provides a monetary and an injunctive remedy to persons whose federal constitutional rights have been violated by government officials. See *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 85, 658 N.E.2d 814. But in those actions, as here, government officials may be "entitled to be shielded from liability for civil damages." Id.; see, also, *Piphus v. Blum* (1995), 108 Ohio App.3d 218, 670 N.E.2d 518. The immunity from suit can be absolute or qualified. See *Mireles v. Waco* (1991), 502 U.S. 9, 9–12, 112 S.Ct. 286, 116 L.Ed.2d 9; *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396. While Section 1983 immunity extends to public defenders in federal court, the United States Supreme Court has declined to hold that federal law provides immunity for counsel in state malpractice suits, leaving the issue to the states to resolve. See *Ferri v. Ackerman*, 444 U.S. at 201, 100 S.Ct. 402, 62 L.Ed.2d 355; see, also, *Dziubak v. Mott* (Minn.1993), 503 N.W.2d 771, fn. 4. "Although unfairness and injustice to a litigant may result on occasion," neither a qualified nor an absolute limitation on a constitutionally injured plaintiff's right to sue for monetary damages runs afoul of the Equal Protection Clause. *Mireles v. Waco*, 502 U.S. at 10, 112 S.Ct. 286, 116 L.Ed.2d 9. Since the sovereign-immunity statute does not restrict a fundamental constitutional right, but rather limits the collateral remedy to redress harms resulting from its deprivation, it is not subject to the highest level of judicial scrutiny.

{¶ 22} The Thorp appellants' second constitutional argument is more easily resolved. Section 16, Article I of the Ohio Constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law." The Thorp appellants contend that R.C. Chapter 2744, granting immunity to the employees of political subdivisions, violates the right-to-a-remedy provision of the Ohio Constitution.

{¶ 23} The Ohio Supreme Court has held that R.C. 2744.02(B)(4), which grants immunity to political subdivisions for the negligence of their employees in jails or detention facilities, does not violate Section 16, Article I. See *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 639 N.E.2d 31, paragraph three of the syllabus. The court reaffirmed "the traditional rule [that] the doctrine of sovereign immunity * * * negated the right to sue the state without its permission." Id. at 353, 639 N.E.2d 31. The court held that the remedy provision "is not self-executing, and that the state of Ohio is not subject to suits in tort without the consent of the General Assembly." Id at 354, 639 N.E.2d 31. "The General Assembly in enacting R.C. Chapter 2744 has used that power to create a scheme for immunity and liability of political subdivisions. Because the General Assembly has the power to define the contours of the state's liability, within the constraints of equal protection and due process, the right to sue the state is not fundamental." Id. at 355, 639 N.E.2d 31. This reasoning applies equally to public-defender immunity from malpractice suits. The right-to-a-remedy provision does not bar Strigari's assertion of immunity under R.C. Chapter 2744.

{¶ 24} Therefore, the state is free to place reasonable regulation on the right to bring a legal negligence suit against attorney employees of the public defender's office. As there is no fundamental right to sue for legal malpractice, we apply the less stringent rational-relation test to the Thorp appellants' claims.

## The Rational–Relation Test

{¶ 25} In *Andreyko v. Cincinnati* at ¶ 13, we said that "[w]here neither a fundamental constitutional right nor a suspect classification is at issue, a legislative distinction between two groups need only be created in such a manner as to bear a rational relationship to a legitimate governmental interest. * * * A legislative decision to treat two groups differently is constitutionally infirm only where it is 'based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them.' * * * In making this determination, a reviewing court must grant substantial deference to the economic judgment of the legislative entity." (Citations omitted.)

{¶ 26} R.C. Chapter 2744 was enacted to preserve the fiscal resources and the financial integrity of political subdivisions. See *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105; see, also, *Engleman v. Cincinnati Bd. of Edn.* As public defenders are obligated to represent any client assigned to them, see R.C. 120.16(A)(1), and often have limited resources, are underfunded, and carry heavy caseloads, there is an important economic basis for granting immunity by reducing the ancillary costs of defending malpractice claims brought by criminal defendants against the public defenders who have represented them.

{¶ 27} In *Dziubak v. Mott* (Minn.1993), 503 N.W.2d 771, 775–776, the Minnesota Supreme Court ruled that important public values required that its state public defenders be immune from malpractice claims. The court justified immunity in large part on the economic reality of the costs of running a public defender service. The Vermont Supreme Court, in *Bradshaw v. Joseph* (1995), 164 Vt. 154, 155–156, 666 A.2d 1175, also acknowledged the important economic basis for granting immunity to the employee attorneys of the public defender's office. See, also, Note, The Public Defender Defendant: A Model Statutory Approach to Public Defender Malpractice Liability (1994), 29 Valparaiso L.Rev. 511, 523–532.

{¶ 28} Those courts that have rejected immunity for public defenders have done so on the broad principle that regardless of whether the government compensates the public defender, his duty to the client as an advocate does not differ from that of privately retained counsel. See, e.g., *Spring v. Constantino* (1975), 168 Conn. 563, 362 A.2d 871; *Reese v. Danforth* (1979), 486 Pa. 479, 406 A.2d 735; *Donigan v. Finn* (1980), 95 Mich.App. 28, 290 N.W.2d 80.

{¶ 29} Here, however, the Thorp appellants have a heavy burden of demonstrating that the legislative immunity granted to public defenders is irrational. See *Andreyko v. Cincinnati* at ¶ 14. They must negate every conceivable basis for immunity, including the economic justifications, to sustain their equal-protection challenge. See id. They did not provide the trial court with any statistical, financial, or historical evidence questioning the fiscal-integrity basis for public defender immunity. The Thorp appellants have failed to sustain their burden of establishing that the immunity granted to public defenders by R.C. Chapter 2744 is not rationally related to the legitimate government interest in fiscal resources and the political subdivision's ability to deliver legal representation to indigent persons charged with state criminal offenses in compliance with *Gideon*. Therefore, Strigari was entitled to raise the statutory-immunity defenses of R.C. Chapter 2744.

Application of the Sovereign–Immunity Test of R.C. Chapter 2744

{¶ 30} We must next determine whether Strigari was entitled to immunity from the claims of the Thorp appellants. The Thorp appellants did not sue the Hamilton County Public Defender's Office or the county commissioners. They did not sue Strigari in his role as a policymaker for the public defender's office, but rather in his capacity as an attorney representing them in a criminal prosecution—an attorney employee of the office. Therefore, the three-tiered analysis we employed in *Engleman v. Cincinnati Bd. of Edn.* (June 22, 2001), 1st Dist. No. C–000597, 2001 WL 705575, to determine the liability or immunity of a political subdivision does not apply to this case. See *Fabrey v. McDonald Police*

*Dept.,* 70 Ohio St.3d at 356, 639 N.E.2d 31; see, also, *Wooton v. Vogele,* 147 Ohio App.3d 216, 2001-Ohio-7096, 769 N.E.2d 889, at ¶ 15.

{¶ 31} When a plaintiff sues an individual employee of a political subdivision, the analysis begins with R.C. 2744.03(A)(6).[2] See *Fabrey v. McDonald Police Dept.,* 70 Ohio St.3d at 356, 639 N.E.2d 31. R.C. 2744.03(A)(6) creates a presumption of immunity for employees of a political subdivision. It provides that an individual employee is immune from liability in performing his job unless (1) his acts or omissions are manifestly outside the scope of his employment; (2) his acts or omissions are malicious, in bad faith, or wanton or reckless; or (3) liability is expressly imposed upon the employee by another statute.

{¶ 32} Strigari is an employee of a political subdivision and thus is immune from suit for acts within his official duties unless one of the enumerated exceptions applies. See *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 658 N.E.2d 814, fn. 6; see, also, *Wooton v. Vogele* at ¶ 16 and 17. Allegations of negligence, even if true, will not support a malpractice claim under the immunity exception in R.C. 2744.03(A)(6)(b).

{¶ 33} Here, construing the facts most strongly in the Thorp appellants' favor, we hold that there is no evidence that Strigari acted manifestly outside the scope of his employment. The Thorpe appellants also alleged in their complaint that Strigari's conduct was "reckless" as well as negligent. Even under the notice-pleading requirements of Civ.R. 8(A), a negligence claim is not converted to one of reckless conduct on a mere allegation in the complaint without evidence of a substantially greater risk than negligence. "[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Fabrey v. McDonald Police Dept.,* 70 Ohio St.3d at 356, 639 N.E.2d 31; see, also, *McGuire v. Lovell* (1998), 128 Ohio App.3d 473, 481–482, 715 N.E.2d 587. To prevail on this claim, the Thorp appellants would have had to offer evidence that Strigari acted with perversity of will, conscious that his conduct would, in all likelihood, have resulted in an injury or created an unreasonable risk of injury to the criminal defendants he represented. See, e.g., *Wooton v. Vogele* at ¶ 19.

{¶ 34} Here, the evidence reflects only that Strigari, along with several other public defenders, visited the Thorp appellants in the lockup before their arraignment, interviewed the group of defendants present, gave them legal advice based

---

2. In August 1999, the Ohio Supreme Court invalidated the Am.Sub.H.B. No. 350 amendments to the Political Subdivision Tort Liability Act. See *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062. We are thus bound to apply the law in effect at the time Strigari's alleged negligence occurred—the former R.C. Chapter 2744, effective September 28, 1994. See *Hubbard v. Canton City School Bd. of Edn.,* 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, at ¶ 17.

upon his twenty-five years of experience, and accompanied them to the municipal court to act as counsel if requested. The record fails to demonstrate any evidence that Strigari acted with the requisite ill will or disregard necessary to sustain a recklessness claim. Other than the use of the word "reckless" in their complaint, nothing in the record suggests that the Thorp appellants' allegations were anything more than a negligence claim. Where the record does not contain evidence that the employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner, the trial court correctly granted summary judgment.

### Conclusion

{¶ 35} Because R.C. 2744.03(A)(6) is not unconstitutional to the extent that it provides immunity to the attorney employees of a public defender's office for acts of alleged negligence, and because the Thorp appellants effectively alleged only that Strigari acted negligently, he was immune from civil liability as a matter of law under Civ.R. 56. Therefore, we hold that the trial court correctly granted summary judgment pursuant to Civ.R. 56 in favor of Strigari. The first and second assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

DOAN, P.J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring.

{¶ 36} I concur in Judge Gorman's well-reasoned opinion. The conclusions are required by the state of the law as handed down to us by the legislature and the Ohio Supreme Court.

{¶ 37} But I continue to believe that governmental immunity in the United States is simply one big legal mistake—based on the English model of "the king can do no wrong."[3] We have no king. And we should not make the government king, and thus not liable for its transgressions against individual rights.

{¶ 38} As to this case, we do not know whether there was any malpractice—the case never got that far because of the immunity. But it is odd that a person with money, who can hire an attorney, has a remedy if the attorney errs, but a poor person has none. Alas, the way of the world; but in this case mandated by the legislature.

---

**3.** See *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 662 N.E.2d 287, (Douglas, J., dissenting).