OPINION *Page 2 
{¶ 1} Plaintiffs-appellants, Richard and Linda Harvey, appeal from the September 4, 2007 Judgment Entry of the Stark County Court of Common Pleas granting the Motions for Summary Judgment filed by defendants-appellees Republic Services of Ohio II, LLC, Timothy Vandersall, Stark County Deputy Darin Baad and Stark County Deputy Craig Kennedy.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellee, Republic Services of Ohio II, LLC (hereinafter "Republic"), is the owner and operator of a solid waste landfill known as Countywide Recycling and Disposal Facility. The landfill is located in Pike Township, Stark County, Ohio. Appellee Timothy Vandersall is its General Manager.
 {¶ 3} Appellants, Richard and Linda Harvey, are members of Club 3000. Club 3000 was incorporated as a non-profit corporation in 1987, with a charter cancellation in 1997 and a re-instatement in 2002. Its purpose was to provide opposition to the landfill being operated by appellee Republic and its predecessor.
 {¶ 4} After a permit was issued by the director of the Ohio Environmental Protection Agency to permit a solid waste disposal facility on the land now owned by appellee Republic, Club 3000 appealed such decision. In order to resolve such issue, a Stipulation and Settlement Agreement was entered into in October of 1990 between Club 3000 and appellee Republic's predecessor, Countywide Landfill, Inc. Such agreement stated, in relevant part, as follows:
 {¶ 5} "1. Countywide Landfill, Inc. shall allow authorized representatives of Club 3000 access to Countywide Landfill for the purposes of observing, inspecting and *Page 3 
investigating the site and inspecting and copying any of the documents identified in paragraph six and daily waste receipt records. Such access shall be during Countywide Landfill's regular hours of operation and upon 24 hours notice. Countywide Landfill may waive advance notice and permit access if appropriate supervisory personnel are available. Within thirty (30) days of the signing of this Agreement, Club 3000 shall provide Countywide with a list of no more than six (6) individual members who shall be considered its designated representatives for the purposes of carrying out the inspections and investigations authorized by this provision. Should any change in the identification of the designated representatives become necessary, Club 3000 will provide reasonable notice of such change to Countywide Landfill."
 {¶ 6} In 2003, appellee Republic filed an action against Club 3000, arguing that the Stipulation and Settlement Agreement had terminated. The Stark County Court of Common Pleas, pursuant to a Judgment Entry filed on September 29, 2004, in Case No. 2003CV02339, held that the Stipulation and Settlement Agreement remained in full force and effect and that Club 3000's designated representatives had the continuing right under the same to continue making on site inspections of the landfill.
 {¶ 7} Appellants Richard and Linda Harvey have participated in on-site inspections of the landfill as designated representatives of Club 3000. Between the summer of 2004 and November 1, 2004, appellant Richard Harvey went out to inspect the landfill as a designated member of Club 3000 approximately sixteen to twenty times. He attempted to perform weekly inspections, but was not always able to do so. During the same period of time, deputies were called out to the landfill approximately fifteen times, primarily by appellee Republic, based on disagreements between Club 3000 and *Page 4 
appellee Republic over Club 3000's right to inspect the property. On each of these occasions, the designated representatives of Club 3000 would leave the premises after being confronted by sheriff's deputies.
 {¶ 8} On November 1, 2004, appellants arrived at the landfill in order to conduct an on-site inspection after giving 24 hours advance notice. Prior to visiting the landfill, appellant Richard Harvey had prepared a handwritten waiver that he and appellant Linda Harvey had signed in front of a notary. Appellant Richard Harvey testified during his deposition that he prepared the waiver because "[w]e have been told that we've had to sign that waiver so many times, and I just believe well maybe we can get this thing, . . . resolved." Deposition of Richard Harvey at 37. After arriving at the landfill, appellant Richard Harvey signed in at the office and showed the handwritten waiver to Jim Steigerwald, a landfill employee. However, both Steigerwald and appellee Timothy Vandersall told appellant Richard Harvey that they did not accept handwritten notes and that appellants would have to sign a lengthy waiver and indemnification form prepared by appellee Republic. Because the attorneys for Club 3000 had advised appellants not to sign the waiver form because of the indemnification provisions contained in the same, appellants refused to sign appellee Republic's form and were told then that they had to reschedule their inspection.
 {¶ 9} Appellant Richard Harvey, however, told appellee Vandersall and Steigerwald that appellants had made their appointment, signed in and were going to inspect the property. Appellant Richard Harvey then asked for an escort, as they had had in the past, although an escort was not required under the terms of the Settlement *Page 5 
Agreement. After appellee Republic refused to provide one, appellants proceeded with their inspection.
 {¶ 10} Appellee Timothy Vandersall then called the Stark County Sheriffs Department and requested assistance. Appellees, Deputies Darin Baad and Craig Kennedy of the Stark County Sheriffs Department, were dispatched to the landfill on a criminal trespassing complaint. The deputies were told that appellants had refused to sign the waiver form that the landfill was requiring all visitors to sign. When asked during his deposition whether, on November 1, 2004, he was aware of any agreement between the parties or of court order or statute that specified that appellants had to sign a waiver to inspect the landfill, Deputy Baad responded as follows: "No. Only by what Mr. Steigerwald and Mr. Vandersall had stated before that their company policy is visitors must sign this liability form." Deposition of Deputy Baad at 34. Appellants, when asked by the Deputies to leave the premises, refused to do so although they had left on previous occasions when asked.
 {¶ 11} Appellees, Deputies Baad and Kennedy, at the direction of their supervisor, then issued appellants a summons for trespassing. While appellant Linda Harvey accepted her summons and was permitted to leave, appellant Richard Harvey refused the summons. Appellant Richard Harvey was then arrested and taken to the jail for booking. He was released that night on his own recognizance.
 {¶ 12} Following a trial in Canton Municipal Court, appellants, on January 24, 2005, were found not guilty of criminal trespass. *Page 6 
 {¶ 13} Subsequently, on October 31, 2006[1], appellants filed a complaint against appellees Republic and Timothy Vandersall, alleging causes of action for malicious prosecution, false arrest and intentional infliction of emotional distress. Appellants, in their complaint, also brought a separate count against appellees Deputy Craig Kennedy and Deputy Darin Baad, alleging violations of their civil rights under 42 US Code Section 1983.
 {¶ 14} On July 13, 2007, appellees Deputy Baad and Deputy Kennedy filed a Motion for Summary Judgment. On the same date, appellees Republic and Timothy Vandersall filed a Joint Motion for Summary Judgment. As memorialized in a Judgment Entry filed on September 4, 2007, the trial court granted both Motions for Summary Judgment.
 {¶ 15} Appellants now raise the following assignments of error on appeal:
 {¶ 16} "I. WITH RESPECT TO THE TRIAL COURT'S DISMISSAL OF THE PLAINTIFFS'/APPELLANTS' CLAIM FOR MALICIOUS PROSECUTION AGAINST REPUBLIC SERVICES OF OHIO II, LLC AND TIM VANDERSALL, THE TRIAL COURT'S FINDING THAT THERE WAS NO EVIDENCE THAT THE DEFENDANTS/APPELLEES — REPUBLIC SERVICES OF OHIO II, LLC OR TIM VANDERSALL INSTITUTED OR CONTINUED THE PROSECUTION OF RICHARD HARVEY OR LINDA HARVEY FOR CRIMINAL TRESPASSING AND THE RESULTANT CONCLUSION OF THE TRIAL COURT THAT FOR THIS REASON THE PLAINTIFFS/APPELLANTS COULD NOT SUSTAIN THEIR ACTION FOR MALICIOUS PROSECUTION, IS ERRONEOUS AND UNSUPPORTED BY AND CONTRADICTED BY THE RECORD IN THIS CASE. *Page 7 
 {¶ 17} "II. WITH RESPECT TO THE TRIAL COURT'S DISMISSAL OF THE PLAINTIFFS'/APPELLANTS' CLAIM AGAINST REPUBLIC SERVICES OF OHIO II, LLC AND TIM VANDERSALL FOR FALSE ARREST, THE TRIAL COURT'S FINDING THERE WAS NO EVIDENCE THAT THE DEFENDANTS/APPELLEES — REPUBLIC SERVICES OF OHIO II, LLC OR TIM VANDERSALL REQUESTED OR DIRECTED THE ARREST OF RICHARD HARVEY AND LINDA HARVEY FOR CRIMINAL TRESPASSING AND THE FURTHER FINDING OF THE TRIAL COURT THAT REPUBLIC SERVICES OF OHIO II, LLC AND TIM VANDERSALL WERE NOT INVOLVED AND DID NOT INDUCE THE SUMMONSING AND/OR ARREST OF PLAINTIFFS/APPELLANTS — RICHARD HARVEY AND LINDA HARVEY FOR CRIMINAL TRESPASSING AND THE RESULTANT CONCLUSION THAT, BASED UPON THESE FINDINGS, THE PLAINTIFFS/APPELLANTS COULD NOT SUSTAIN THEIR ACTION FOR FALSE ARREST, ARE ERRONEOUS AND UNSUPPORTED BY AND CONTRADICTED BY THE RECORD IN THIS CASE.
 {¶ 18} "III. WITH RESPECT TO THE TRIAL COURT'S DISMISSAL OF THE PLAINTIFFS'/APPELLANTS' CLAIM AGAINST REPUBLIC SERVICES OF OHIO II, LLC AND TIM VANDERSALL FOR FALSE ARREST, THE COURT'S INTERPRETATION THAT APPLICABLE LEGAL PRINCIPLES REQUIRE THAT TO ESTABLISH A CLAIM FOR FALSE ARREST THE PLAINTIFFS MUST PROVE THAT THE DEFENDANTS — REPUBLIC AND TIM VANDERSALL PERSONALLY ARRESTED OR DIRECTED THE ARREST OF THE PLAINTIFFS/APPELLANTS AND THAT EVIDENCE OF THE INITIATION, INSTIGATING AND INDUCING OF THE STARK COUNTY SHERIFF'S DEPUTIES TO MAKE THE ARREST OF THE *Page 8 
PLAINTIFFS/APPELLANTS WAS NOT SUFFICIENT TO SUPPORT THEIR CAUSE OF ACTION FOR FALSE ARREST, WAS AND IS A SUBSTANTIALLY AND PREJUDICIALLY ERRONEOUS INTERPRETATION AND APPLICATION OF LAW.
 {¶ 19} "IV. WITH RESPECT TO THE TRIAL COURT'S DISMISSAL OF THE PLAINTIFFS'/APPELLANTS' 42 US CODE § 1983 CLAIM AGAINST DEPUTY CRAIG KENNEDY AND DEPUTY DARIN BAAD, THE TRIAL COURT [SIC] FINDING THAT OFFICERS KENNEDY AND BAAD HAD PROBABLE CAUSE TO ARREST THE PLAINTIFFS/APPELLANTS — RICHARD HARVEY AND LINDA HARVEY FOR CRIMINAL TRESPASSING IS ERRONEOUS AND UNSUPPORTED BY AND CONTRADICTED BY THE RECORD WHICH CONTAINS SUBSTANTIAL AND PLENTIFUL EVIDENCE OF THE ABSENCE AND LACK OF PROBABLE CAUSE AND WHICH, AT THE LEAST, DEMONSTRATES THE EXISTENCE OF A BONA FIDE AND GENUINE DISPUTE UPON THE ISSUE OF ABSENCE AND/OR A LACK OF PROBABLE CAUSE TO ARREST THE PLAINTIFFS/APPELLANTS.
 {¶ 20} "V. WITH RESPECT TO THE TRIAL COURT'S DISMISSAL OF THE PLAINTIFFS'/APPELLANTS 42 US CODE § 1983 CLAIM AGAINST DEPUTY KENNEDY AND DEPUTY BAAD, THE TRIAL COURT ERRED: 1) IN FINDING THAT THE RECORD CONTAINS NO SUBSTANTIAL EVIDENCE THAT DEPUTY KENNEDY'S OR DEPUTY BAAD'S CONDUCT VIOLATED ANY OF THE PLAINTIFFS' CONSTITUTIONAL RIGHTS; AND 2) IN FINDING THAT THE RECORD CONTAINS NO EVIDENCE THAT DEPUTY KENNEDY AND/OR DEPUTY BAAD IN THEIR ACTIONS AND BY THEIR WARRANTLESS ARREST OF THE PLAINTIFFS ENGAGED IN ANY CONDUCT THAT A REASONABLE LAW ENFORCEMENT *Page 9 
OFFICER WOULD OR SHOULD HAVE CLEARLY KNOWN WAS A VIOLATION OF THE PLAINTIFFS' CONSTITUTIONAL RIGHTS; AND, ACCORDINGLY, THE TRIAL COURT ERRED IN FINDING THAT SAID OFFICERS WERE ENTITLED TO BE INSULATED FROM AND IMMUNIZED AGAINST LIABILITY BY THE DOCTRINE OF QUALIFIED IMMUNITY.
 {¶ 21} "VI. THE TRIAL COURT COMMITTED SUBSTANTIAL AND PREJUDICAL ERROR BY NOT OBSERVING AND APPLYING THE ESTABLISHED REQUIREMENTS AND STANDARDS FOR THE CONSIDERATION AND DETERMINATION OF SUMMARY JUDGMENT MOTIONS, WHICH ERRORS INCLUDE, BUT ARE NOT LIMITED TO: THE COURT'S FAILURE TO REVIEW AND CONSIDER THE ENTIRE RECORD INCLUDING ALL OF THE DEPOSITIONS, AFFIDAVITS, PRIOR TRIAL TRANSCRIPTS, ANSWERS TO INTERROGATORIES MADE A PART OF THE RECORD JUDICIALLY NOTICED DOCUMENTS AND PRIOR JUDGMENT ENTRIES AND OTHER EVIDENTIARY MATERIAL WHICH WERE MADE A PART OF THE RECORD; AND THE FAILURE OF THE COURT TO CONSTRUE ALL OF THE EVIDENTIARY FACTUAL MATERIAL AS CONTAINED IN THE RECORD IN A MANNER MOST FAVORABLE TO THE PLAINTIFFS.
 {¶ 22} "VII. THE TRIAL COURT ERRED IN FAILING TO GRANT THE PLAINTIFFS'/APPELLANTS' REQUEST FOR AN EXTENSION OF TIME FOR THE TAKING OF THE DEPOSITION OF DEFENDANT/APPELLANT — TIM VANDERSALL AND IN FAILING TO GRANT THE PLAINTIFFS'/APPELLANTS' MOTION TO COMPEL THE DEFENDANTS/APPELLEES — REPUBLIC SERVICES OF OHIO II, LLC AND TIM *Page 10 
VANDERSALL TO COOPERATE AND SUBMIT TO THE TAKING OF SAID DEPOSITION."
 {¶ 23} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. Therefore, we must refer to Civ. R. 56(C), which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 24} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving *Page 11 
party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429,1997-Ohio-259, 674 N.E.2d 1164, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264.
 {¶ 25} It is based upon this standard that we review appellants' first, second, third, fourth and fifth assignments of error.
 {¶ 26} For purposes of clarity, we shall address appellants' assignments of error out of sequence.
 VI {¶ 27} Appellants, in their sixth assignment of error, argue that the trial court failed to consider the entire record in ruling on the pending Motions for Summary Judgment and that the trial court failed to construe the evidence in appellants' favor. Appellants note that the trial court adopted the statement of facts prepared by appellees Republic and Vandersall.
 {¶ 28} However, "a[b]sent any conflict in the factual evidence material to the issues presented . . . Civ. R. 56(C) merely requires the court to adopt the particular construction that might reasonably be put on the evidence before it which most strongly favors the claim or defense of party against whom the motion is made and which the motion puts in issue." Fenton v. Time Warner Ent. Co., Montgomery App. No. 19755, 2003-Ohio-5326 at paragraph 9, vacated on other grounds. We find that there is no dispute in the case sub judice as to the relevant material facts and that the trial court did not err in adopting the statement of facts that it did. *Page 12 
 {¶ 29} Moreover, we find no evidence that the trial court failed to review the entire record. While the trial court, in its Judgment Entry, refers to specified documents, there is no evidence that the entire record was not considered by the trial court.
 {¶ 30} Appellants' sixth assignment of error is, therefore, overruled.
 I {¶ 31} Appellants, in their first assignment of error, argue that the trial court erred in granting summary judgment to appellees Republic and Vandersall on appellants' malicious prosecution claim. We agree.
 {¶ 32} The tort of malicious criminal prosecution protects a criminal defendant's right to recover damages caused by misuse of criminal actions. See Trussell v. Gen. Motors Corp. (1990), 53 Ohio St.3d 142,144, 559 N.E.2d 732. To sustain an action for malicious prosecution, a plaintiff must establish: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in his favor. Ash v. Ash (1995), 72 Ohio St.3d 520, 522,651 N.E.2d 945, citing Trussell, supra. Actions for malicious prosecution have been met with disfavor by Ohio courts, which have allowed recovery only when a plaintiff fully complies with the requirements of such an action. Dailey v. First Bank of Ohio, Franklin App. No. 04AP-1309,2005-Ohio-3152, at ¶ 14. Thus, a plaintiff's failure to establish any one element by a preponderance of the evidence is fatal to a malicious prosecution claim. Id.
 {¶ 33} The Ohio Supreme Court thoroughly addressed the law relevant to malicious prosecutions in Archer v. Cachat (1956), 165 Ohio St. 286,287-288, 135 N.E.2d 404: "One of the fundamental rules of the law relating to actions for malicious *Page 13 
prosecution is summarized clearly in the following excerpt from 3 Restatement of the Law of Torts, page 386:
 {¶ 34} "`G. Influencing a public prosecutor. A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving such information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate proceedings or not. Where a private person gives to a prosecuting officer information which he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this section even though the information proves to be false and his belief therein was one which a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
 {¶ 35} "`If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible and a prosecution based thereon is procured by the person giving the false information. In order to charge a private person with the responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to commence the prosecution or that the information furnished by him upon which the official acted was known to be false.' *Page 14 
 {¶ 36} "The following similar statement appears in Prosser on Torts, page 865: `If the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instituted the proceedings * * *.'" (Emphasis added). See also, Robbins v. Fry (1991), 72 Ohio App.3d 360,362, 594 N.E.2d 700, in which the court noted that a citizen who only serves as an informer of criminal activity is not considered as having instituted criminal proceedings.
 {¶ 37} Based on our review of the record and when construing the evidence in the light most favorable to appellants, we find reasonable minds could differ as to whether Appellees Republic and Vandersall maliciously initiated the prosecution of appellants.[2] Of utmost importance to our decision is the fact no where within the Settlement Agreement is inspection conditioned upon execution of a waiver. Republic and Vandersall were not free to unilaterally add terms to the court order. When coupled with their acknowledged inaccurate statement all visitors were required to sign a waiver and their insistence appellants were trespassing and refused to leave on November 1, 2004 — reasonable minds could conclude the information provided to the sheriff deputies was false; therefore, pursuant to 3 Restatement of the Law of Torts, "an intelligent exercise of the officer's discretion becomes impossible." The fact the Sheriffs Department had responded to numerous requests for assistance during the summer/fall of 2004, contributed to the subtle, yet permissively inferable, pressure on the sheriff *Page 15 
deputies to take action. We find appellants presented sufficient evidence Republic and Vandersall maliciously initiated their prosecution to withstand summary judgment.
 {¶ 38} Appellant's first assignment of error is sustained.
 II, III {¶ 39} Appellants, in their second and third assignments of error, argue that the trial court erred in granting summary judgment to appellees Republic and Vandersall on appellants' false arrest claim. We agree.
 {¶ 40} A false arrest claim is made by showing (1) the intentional detention of the person, and (2) the unlawfulness of the detention. SeeNiessel v. Meijer, Inc., Warren App. No. CA2001-04-027, 2001-Ohio-8645 . A cause of action for false arrest can only be brought against the persons making the arrest, or their employers. See Hamilton v. BestBuy, Montgomery App. No. 19001, 2002-Ohio-924. In addition, private citizens who call upon assistance from law enforcement officers are insulated from tort liability if their request for assistance does not amount to a request for arrest. Niessel, Warren App. No. CA2001-04-027, at 14, quoting White v. Standard Oil Co. (1984), 16 Ohio App.3d 21,474 N.E.2d 366. To impose liability on a private citizen for a wrongful arrest, the arrest by the officer must be so induced or instigated by the defendant that the arrest is made by the officer, not of his own volition, but to carry out the request of the defendant. Beverly v. TheLawson Company (Aug. 18, 1983), Cuyahoga App. No. 45119, 1983 WL 4607, at 4. "Where a private citizen merely summons an officer for assistance because of a disturbance and does not specifically request that the person be arrested nor supply the false information to the police which causes the arrest, the citizen is not liable." White, supra at 22-23. *Page 16 
 {¶ 41} There is no dispute that neither appellee Republic nor appellee Vandersall arrested appellants. The issue thus becomes whether there was evidence that the deputies were so induced or instigated by such appellees that the arrest was made by the deputies not of their own volition, but to carry out the request of the above appellees. Appellants, in their first assignment of error, argue that the trial court erred in finding that there was no such evidence.
 {¶ 42} There is no disputing that Deputies Kennedy and Baad were dispatched to the landfill in response to a call that appellants were trespassing on the premises and appellees wanted them to leave. The deputies were told by appellee Vandersall that appellants began inspecting the landfill after refusing to the sign the waiver form. After appellants refused to leave the landfill after being requested to do so by the deputies, arguing that they had a right to be on the premises pursuant to the Stipulation and Settlement Agreement, Deputy Kennedy called the Stark County Sheriffs Office. The following is an excerpt from Deputy Kennedy's deposition testimony:
 {¶ 43} "Q. All right. Did you call and ask for advice?
 {¶ 44} "A. Yeah, after we had some conversation, not necessarily just advice to begin with. We are pretty, I guess a strict department, as our supervisors want to know what's going on, so anything that we think or I guess we deem that shouldn't be passed up. I guess the rule of thumb is the sheriff doesn't want to get a phone call going `Hey, what about this report?' And he goes, `I have no idea what you're talking about.' They want to know what's going on in this county and this department.
 {¶ 45} "Q. All right. In this instance you don't always call for exchange of advice?
 {¶ 46} "A. No. *Page 17 
 {¶ 47} "Q. But in this instance you did?
 {¶ 48} "A. Correct.
 {¶ 49} "Q. Who did you speak with?
 {¶ 50} "A. I believe I spoke with Lieutenant Rutledge at the time and maybe, I think I may have spoke (sic) with Sergeant Lanzer, but I'm not sure about that.
 {¶ 51} "Q. All right. What did Lieutenant Rutledge tell you?
 {¶ 52} "A. Basically I called him and said hey, this is what we have going on, we're out here, these are the conditions, what do you think. You know, this is what I got, kind of what do you think, let me have your opinion on it. At that time, you know, it was tell them to leave. If they don't leave, then summons them for criminal trespassing, which I agreed with.
 {¶ 53} "Q. All right. If they don't accept the summons then arrest them?
 {¶ 54} "A. Well, that was a different phone conversation because then it was summons them and, you know, we started out —
 {¶ 55} "Q. So you called again then?
 {¶ 56} "A. Yeah, after the —
 {¶ 57} "Q. And this time you said, well, the guy says he won't leave, that he has a right to be here?
 {¶ 58} "A. No. The second time I called was because this guy is refusing the summons and, you know what I mean, what do I do.
 {¶ 59} "Q. All right. And did Mr. Harvey tell you why he was refusing the summons? *Page 18 
 {¶ 60} "A. I specifically, you know, remember him — it was an in-depth conversation. He wanted to know well what's going to happen if this — we explained to him here is what happens in the summonsing process, here's what happens if you refuse that summons, you know. And I remember him saying I think I'm going to have to refuse it and go to jail, and he did." Deposition of Deputy Craig Kennedy at 51-53.
 {¶ 61} The following testimony was adduced when Deputy Baad, during his deposition, was asked why appellant Richard Harvey was arrested:
 {¶ 62} "A. We arrested them after we asked them numerous times to leave. Not because Countywide asked them to leave." Deposition of Deputy Baad at 56.
 {¶ 63} During his deposition, Deputy Baad further testified that appellant Richard Harvey was arrested because he would not submit to the authority of law enforcement after being asked to leave.
 {¶ 64} Appellants, in their third assignment of error, also argue that the trial court erred in its interpretation of the law on false arrest. Appellants note that the trial court, in its Judgment Entry, did not state that a private citizen who supplies false information to the police which causes the arrest can be liable for false arrest. SeeWhite, supra. Appellants maintain that appellees Republic and Vandersall falsely told the deputies that all visitors to the landfill were required to sign the waiver that appellants refused to sign when such appellees knew this was false. Appellants note that such appellees, in their responses to discovery, stated that they did not require inspectors from the Ohio EPA, the Canton Health Department, and the Stark County Health Department to sign waivers. *Page 19 
 {¶ 65} For reasons similar to those we stated for sustaining appellants' first assignment of error, we sustain appellants' second and third assignments of error claiming false arrest. Although we acknowledge Republic and Vandersall may not have specifically requested appellants be arrested and the deputies sought advice on how to proceed from their supervisors, their repeated requests for assistance throughout the summer/fall of 2004, and their persistent assertion appellants were trespassing on the date in question because they would not sign a waiver as allegedly all visitors were required to do, when considered most favorably towards appellants, could lead reasonable minds to infer Republic's and Vandersall's request for assistance indirectly amounted to or was tantamount to a request for arrest if appellants refused to leave the property, thereby forfeiting their legal right to conduct the inspection. It was appellees' unlawful insistence appellants were trespassing, therefore, impliedly must be removed from the property, which precipitated the deputies arrival on the scene and ultimately lead to the sheriff deputies' decision to summons/arrest appellants. But for Republic's and Vandersall's allegation of trespass, the ensuing summons/arrest would not have occurred. Appellants' summons/arrest arose out of the claim of trespass. Appellant Richland Harvey's decision to refuse a summons does not serve to break that casual chain. As was the case with their malicious prosecution claims, we believe appellants' false arrest claims are best left to the trier-of-fact to determine.
 {¶ 66} Appellants' second and third assignments of error are sustained.
 IV, V {¶ 67} Appellants, in their fourth and fifth assignments of error, argue that the trial court erred in granting summary judgment to appellees Deputy Craig Kennedy and *Page 20 
Deputy Darin Baad on appellants' 42 U.S. Code Section 1983 claim. Appellants, in such claim, alleged that such appellees did not have probable cause to arrest them and, therefore, violated appellants' Constitutional rights.
 {¶ 68} Section 1983, Title 42, U.S. Code provides in relevant part as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 {¶ 69} To establish a Section 1983 claim, a plaintiff must show that (1) the conduct in question was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of rights, privileges or immunities secured by the United States Constitution or other federal law. 1946 St. Clair Corp. v. Cleveland (1990),49 Ohio St.3d 33, 34, 550 N.E.2d 456.
 {¶ 70} Public officials, including police officers and deputy sheriff's, who perform discretionary functions are shielded from liability for civil damages in a Section 1983 action by qualified immunity if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald (1982), 457 U.S. 800, 818,102 S.Ct. 2727, 73 L.Ed.2d 396. The test is one of "objective reasonableness" that requires a "reasonably competent public official [to] know the law governing his conduct." Id. The United States Supreme Court has stated that qualified immunity protects "all but the plainly incompetent or those who *Page 21 
knowingly violate the law." Malley v. Briggs (1986), 475 U.S. 335, 341,106 S.Ct. 1092, 89 L.Ed.2d 271. "[If] officers of reasonable competence could disagree on this issue, immunity should be recognized." Id; SeeBruce v. Village of Ontario (Nov. 24, 1998), Richland App. No. 98-CA-9-2, 1999 WL 4085, unreported ("[a] violation of clearly established law must be so clear as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional"). "The doctrine [of qualified immunity] recognizes that these officials must routinely make close decisions in the exercise of their authority and that the law that guides their conduct is often ambiguous and difficult to apply." Murphy v. Reynoldsburg (Aug. 8, 1991), Franklin App. No. 90AP-1296, 1991 WL 150138, unreported, reversed on other grounds (1992),65 Ohio St.3d 356, 604 N.E.2d 138. Thus, qualified immunity encourages government officials to act without hesitation when confronted with a problem that requires a quick and decisive response and ameliorates the concern that most persons would be reluctant to participate in public service in the absence of such immunity. Id. Qualified immunity provides immunity not only from liability but also from trial and its related burdens, costs, risks, and distractions. Piphus v. Blum (1995),108 Ohio App.3d 218, 225, 670 N.E.2d 518; (citing Mitchell v. Forsyth (1985),472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411).
 {¶ 71} "Qualified immunity is a question of law, not fact, which can be properly determined by summary judgment." Cook v. Cincinnati (1995),103 Ohio App.3d 80, 85, 658 N.E.2d 814 (citing Harlow v. Fitzgerald
(1982), 457 U.S. 800, 818; Dominque v. Telb (C.A.6, 1987), 831 F.2d 673,676). Therefore, given a particular set of facts viewed in the light most favorable to the non-moving plaintiff, the issue of whether a public official did not act reasonably (and hence was not entitled to qualified immunity) is a *Page 22 
matter for the court and may properly be determined by summary judgment.Id; Williams v. Franklin County Bd. of Com'rs., (2001),145 Ohio App.3d 530, 763 N.E.2d 676; Murphy v. Reynoldsburg (Aug. 8, 1991), Franklin App. No. 990AP-1296, 1991 WL 150938, unreported, reversed on other grounds (1992), 65 Ohio St.3d 356, 604 N.E.2d 138. (Citing Poe v.Haydon (C.A.6, 1988), 853 F.2d 418, 425). Moreover, even on summary judgment, the ultimate burden of proof is on a plaintiff to show that a defendant is not entitled to qualified immunity. Cook,103 Ohio App.3d at 85, 658 N.E.2d 814; Murphy, supra, Gardenhire v. Schubert (C.A.6, 2000), 205 F.3d 303, 310-311. Although qualified immunity is an affirmative defense, the ultimate burden is on the plaintiff to show that a defendant is not entitled to qualified immunity. Wegener v.Covington (C.A.6, 1991), 933 F.2d 390, 392. A defendant bears the initial burden of coming forward with facts to suggest that he was acting within the scope of his discretionary authority during the incident in question. Id. Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in the defendant's position would have clearly understood that he was under an affirmative duty to refrain from such conduct. Id.
 {¶ 72} As is stated above, appellants maintain that the deputies did not have probable cause to arrest appellant Richard Harvey. Probable cause exists at the time of the arrest when the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed an offense. Beck v. Ohio
(1964), 379 U.S. 89, 91, 85 S.Ct. 223. Probable cause is determined from factual and practical considerations of everyday life on which reasonable and prudent men act. Draper v. *Page 23 United States (1959), 358 U.S. 307, 313, 79 S.Ct. 329. Ohio courts have interpreted this definition to include the "totality" of the facts and circumstances within a police officer's knowledge. See State v.Finch (1985), 24 Ohio App.3d 38, 492 N.E.2d 1254; Bowling Green v.Godwin, 110 Ohio St.3d 38, 2006-Ohio-3563, 850 N.E.2d 698.
 {¶ 73} Under the facts presented, we find that summary judgment was appropriate. Appellants, in support of their argument that the deputies lacked probable cause to arrest appellant Richard Harvey, note that the deputies were aware that the Settlement between Club 3000 and appellee Republic's predecessor gave Club 3000's designated inspectors the right to make on-site inspections of the landfill and that appellants, in their contacts with the deputies on the day in question and previously, had informed the deputies that they were making their inspections in accordance with the same. Appellants, in their brief, further state, in relevant part, as follows:
 {¶ 74} "7. Deputies Kennedy and Baad further testified that the only issue being raised by Countywide Landfill management relative the inspection being carried out by the Plaintiffs as designated Club 3000 inspectors on the date in question, was that the Landfill employees had asked the Plaintiffs to sign a particular form of Waiver, Release and Indemnification Agreement and that the Plaintiffs had declined to do so upon advice of their legal counsel. The Officers further indicated that they were aware of no law or regulation or agreement or Court Order providing that the Plaintiffs were required to sign a Waiver, Release and Indemnification Agreement or other document. . . .
 {¶ 75} "8. Deputy Kennedy, Deputy Baad and also Deputy Lee (who was generally assigned to the area of Countywide Landfill and was familiar with the ongoing inspection processes being carried out by Club 3000, Inc.'s designated inspectors), all *Page 24 
indicated that they considered the matters related to the Club 3000, Inc. inspectors' on-site inspections of Countywide Landfill and the issues being raised by Countywide Landfill regarding such inspections as being civil matters and not criminal matters; and that on numerous occasion they had previously advised both the Plaintiffs and the Defendants that the issues being raised were civil matters which should be resolved in civil Court. . . .
 {¶ 76} "9. The Deputies also indicated in their depositions that on the date and place in question (i.e. November 1, 2004), it was undisputed that the Plaintiffs had the right to be present and to be making an on site inspection of the Countywide Landfill premises and that this was not an issue; and that the only issue being raised was the Plaintiffs' declining to sign the Waiver, Release and Indemnification form presented by the Landfill managers. . . .
 {¶ 77} "10. That the Deputies were aware of no requirement in the Agreements between the parties or in any Judgment Entry or Court Order or in any statute or law requiring the Club 3000 Inspectors to sign the Waiver, Release and Indemnification document as devised by Republic Services of Ohio II, LLC. . . ."
 {¶ 78} However, we concur with the trial court that appellants "have not established that Deputy Baad or Deputy Kennedy's conduct violated any of [appellants'] constitutional rights on November 1, 2004, or that Deputy Baad or Deputy Kennedy engaged in any conduct that any other police officer would have clearly understood was a violation of [appellants'] constitutional right, and that the police officer would have clearly understood to have an affirmative duty to refrain from such conduct." Although the deputies knew of the Stipulation and Settlement Agreement when they arrived at the *Page 25 
landfill, they were told by the property owner that appellants had refused to sign a waiver that everyone who visited the landfill was required to sign. During his deposition, when asked if there was anything that he knew of in either the trial court's 2003 Judgment Entry or in the Stipulation Settlement Agreement which required appellants to sign a waiver, Deputy Kennedy testified that he was unaware of the specifics of the trial court order. Deposition of Deputy Kennedy at 31. Appellee, Deputy Baad, during his deposition testified that he believed that, when appellants refused to sign the waiver, their privilege to be on the property was lost. When questioned about the 2003 court order, he testified that he was unfamiliar with all of the legal terms contained in the same.
 {¶ 79} Moreover, in a supplemental sheriff's report prepared by Deputy Kennedy on November 2, 2004, Deputy Kennedy notes that appellants had a handwritten waiver of their own. Thus, the deputies would have cause to believe that a waiver was required based on the fact that both sides presented their own waivers. There is no evidence that the Deputies had reason to believe that such information was false. The deputies then approached appellants who, in contrast to previous occasions, refused to leave the premises when the deputies asked them to do so. The record establishes that there was a lengthy and contentious history between appellee Republic and Vandersall and Club 3000. Deputy Kennedy then contacted his supervisor, Lieutenant Rutledge, for advice and was told to issue a summons to appellant for trespassing. After appellant Richard Harvey refused the summons, he was arrested.
 {¶ 80} Based on the foregoing, we find that the deputies had probable cause to arrest. We find that the arrest of appellant Richard Harvey was either supported by *Page 26 
probable cause or, at worst, "was not so unreasonable as to strip [Deputies Kennedy and Baad] of immunity." Boyd v. Village of Lexington, Richland App. No. 01-CA-64, 2002-Ohio-1285. We find that appellants failed to establish that the deputies conduct in this case violated a right so clearly established that any official in [their] position would have clearly understood that he was under an affirmative duty to refrain from such conduct."
 {¶ 81} Appellants' fourth and fifth assignments of error are, therefore, overruled.
 VII {¶ 82} Appellants, in their seventh assignment of error, argue that the trial court erred in failing to grant their request for an extension of time to take the deposition of appellee Timothy Vandersall and in failing to grant their Motion to Compel appellees Republic and Vandersall to cooperate and submit to the taking of such deposition. We disagree.
 {¶ 83} The standard in reviewing the trial court's decision regarding a motion for extension of time for discovery is one of abuse of discretion. Kupczyk v. Kuschnir (July 27, 2000), Cuyahoga App. No. 76614, 2000 WL 1038179, at 6; Miller v. Lint (1980), 62 Ohio St .2d 209, 214, 404 N.E.2d 752. Absent a finding that the trial court's decision is unreasonable, arbitrary, or unconscionable, we must affirm the decision of the trial court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140.
 {¶ 84} In the case sub judice, the trial court, pursuant to a Judgment Entry filed on December 11, 2006, set a trial date for the week of September 17, 2007. The trial court, in its Judgment Entry, ordered all discovery to be completed by June 11, 2007, and all dispositive motions to be filed on or before July 13, 2007. *Page 27 
 {¶ 85} Thereafter, on June 4, 2007, one week before the discovery cut-off date, appellants filed a motion seeking a two week extension of time to take the deposition of appellee Timothy Vandersall. Appellants, in their motion, alleged that they had contacted his attorney to schedule the deposition and that "due to a Trial already being scheduled for June 11, 2007 in another case . . ., counsel for Mr. Vandersall has not indicated that he or his client would be able to accommodate a deposition on or before June 11, 2007." Appellee Republic, in a memorandum in opposition to such motion, noted that appellants had seven months to take appellee Vandersall's deposition before the June 11, 2007, discovery deadline. Such appellee, in its memorandum, further argued as follows:
 {¶ 86} "Plaintiffs' request for an extension is especially inappropriate in view of the previous litigation between the same parties on the same issue (Case No. 2005 CV 03071). Despite having several months to seek discovery in the previous case, plaintiffs failed to depose a single individual, much less Mr. Vandersall, prior to the dismissal of that case. In addition, plaintiffs already have Mr. Vandersall's testimony concerning the events at issue in this litigation through the testimony proffered at the criminal trial of Richard and Linda Harvey for trespass held at the Canton Municipal Court on January 24, 2005."
 {¶ 87} We find that the trial court did not abuse its discretion when, pursuant to a Judgment Entry filed on June 8, 2007, it denied appellants' motion. Appellants filed their case on October 31, 2006. As is stated above, the trial court, pursuant to a Judgment Entry filed on December 11, 2006, ordered all discovery to be completed by June 11, 2007. However, appellants waited until one week before the discovery cut-off deadline *Page 28 
to file their motion for an extension of time and did not provide the trial court with good cause for requesting an extension at such a late time. Moreover, as noted by appellee, this was a refiled case and appellants, in the case sub judice, had from October 31, 2006, when the complaint was filed, to June 11, 2007, to conduct discovery. Furthermore, appellants, in their brief, indicate that they did not even attempt to schedule the depositions until the week or two before the trial court's discovery cut-off date. In short, based on the foregoing, we find that the trial court's decision was not arbitrary, unconscionable or unreasonable.
 {¶ 88} Appellants also contend that the trial court erred in overruling their June 29, 2007 Motion to Compel. Appellants, in such motion, moved the trial court for an order compelling appellees Republic and Vandersall to "cooperatively arrange for the taking of the depositions" of appellee Vandersall and James Steigerwald. However, we find that the trial court did not abuse its discretion. The motion was filed two weeks after the discovery cut-off and after the trial court had denied appellants' request for an extension of time to conduct depositions. *Page 29 
 {¶ 89} Appellants' seventh assignment of error is, therefore, overruled.
Hoffman, P.J., Delaney, J., concurs, Edwards, J. concurs in part and dissents in part.
[1] This case was a refiled case.
[2] We conclude the affidavit of Prosecutor Forchione establishes the decision to maintain the prosecution was made independently by him, although the extent to which his decision may have been based upon false information relayed by Republic and Vandersall to the Sheriffs Department is not readily apparent. *Page 30