DECISION.
{¶ 1} Plaintiffs-appellants Mauro Sosa, Indira Sosa, Karen Sosa, and Steven Sosa appeal from the judgment entered by the trial court in favor of individual Cincinnati police officers and the city of Cincinnati. Because we conclude that neither of the assignments of error has merit, we affirm the judgment of the trial court.
 {¶ 2} On May 4, 1999, Cincinnati police officers received notice that the Cleveland Police Department was looking for Jose Colon, who was wanted for rape, kidnapping, and attempted murder. According to the notice from Cleveland, Colon was staying at 1021 Tennessee Avenue in Cincinnati. The notice described Colon as Hispanic, 5 feet, 8 inches tall, 190 pounds, with a gap in his front teeth.
 {¶ 3} In response to the notice, Cincinnati police officers went to the four-unit building at 1021 Tennessee Avenue. Sergeant William Watts approached Apartment 1, where he met Indira Sosa. Indira told Watts that Colon lived in the building in Apartment 3, and that Colon had gone to pick up his paycheck at the bakery where he worked. Watts directed two plainclothes officers to maintain surveillance of the apartment. The plainclothes officers reported to Watts that two men had approached the building, and that one of the men matched the description of Colon. Watts and five other police officers returned to the building and rang the doorbells for Apartments 1, 2, and 4. Watts stated in his deposition that he did not ring the doorbell for Apartment 3 — where Colon allegedly lived — because he did not want to alert Colon.
 {¶ 4} After the doorbells were rung, a Hispanic man came to the common door. According to Watts, the man matched the general description of Colon. The police officers drew their weapons, ordered the man to the ground, and entered the building. An officer kept the man detained by putting his foot on his back and holding a gun on him. One of the other men in the apartment building told an officer that the man who had answered the door was Colon.
 {¶ 5} In her deposition, Indira Sosa stated that she had told officers that the man was not Colon but was her husband, Mauro Sosa, and that she had offered identification to prove it. Watts, on the other hand, stated that the identification that Indira Sosa provided was for another man who was in the building. According to Watts, he "thought there was a chance [that Sosa] could have been [Colon] and then couldn't prove he wasn't." Mauro was handcuffed and taken to a police car. To confirm Sosa's identity, Watts contacted an agent from the Department of Immigration and Naturalization Services ("INS") while at the building. The agent, who was at home when Watts called, asked Watts to call him at his office when Watts got to the police station. While at the station, Sosa spoke with the INS agent. The agent then told Watts that Mauro Sosa was not Colon. Mauro was driven home by a police officer. According to Indira Sosa, the incident lasted over four hours.
 {¶ 6} The Sosas filed a lawsuit against the police officers and the city, alleging violations of Section 1983, Title 42, U.S.Code. The trial court granted summary judgment in favor of the individual police officers.
 {¶ 7} The claim against the city was tried before a jury. The Sosas elicited testimony from three witnesses — Indira Sosa, Mauro Sosa, and Larry Danaher, an expert on police tactics. At the close of the plaintiffs' case, the city twice moved for a directed verdict. The trial court denied the motions. The city elected not to put on any witnesses. After deliberations, the jury returned a verdict awarding the Sosas $20,000 in damages. The city moved for judgment notwithstanding the verdict, which was granted by the trial court.
 {¶ 8} In their first assignment of error, the Sosas now assert that the trial court erred in granting summary judgment in favor of the individual police officers.
 {¶ 9} "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[1] This qualified immunity applies to those officials whose decisions are reasonable, even if mistaken.[2]
 {¶ 10} Whether the officers in this case were entitled to qualified immunity was a question of law.[3] Once the officers met their burden of showing that they were acting within their discretionary authority, the burden was on the Sosas "to establish that the [officers'] conduct violated a right so clearly established that any official in the [officers'] positions would have clearly understood that he was under an affirmative duty to refrain from such conduct."[4]
 {¶ 11} In attempting to meet this burden, the Sosas argued that Mauro Sosa did not match the description of Colon. The Cleveland Police Department had described Colon as 5 feet, 8 inches tall, 190 pounds, with a gap in his front teeth. According to his driver's license, Mauro was 5 feet, 5 inches tall and 130 pounds. No gap was evident between his teeth. Further, the Sosas stated that Indira had repeatedly attempted to give Mauro's identification documents to the officers.
 {¶ 12} Considering the evidence in the light most favorable to the Sosas, we conclude that they did not meet their burden of establishing that the officers' actions on May 4, 1999, were objectively unreasonable. The officers' actions cannot be examined in a vacuum. Rather, we must consider the situation in which the officers were acting. A wanted man was known to have lived in the apartment building, and at least one person in the apartment building identified Mauro as that man. Further, although Mauro's height and weight differed from the description given by the Cleveland Police Department, the Sosas did not rebut Watts's statement that he believed that Mauro matched the general description of Colon. Finally, the police officers sought the assistance of the INS to determine Mauro's identity. As soon as they learned that Mauro was not Colon, the police officers released him.
 {¶ 13} We conclude that the officers were entitled to qualified immunity for their actions on May 4, 1999. The trial court properly granted summary judgment in favor of the individual police officers, and the first assignment of error is overruled.
 {¶ 14} In their second assignment of error, the Sosas assert that the trial court erred in granting judgment notwithstanding the verdict with respect to their claim against the city.
 {¶ 15} The standard for granting a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) is the same as that for granting a motion for a directed verdict pursuant to Civ.R. 50(A).[5] The trial court shall sustain the motion when "after construing the evidence most strongly in favor of the party against whom the motion is directed, [it] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party."[6] A motion for judgment notwithstanding the verdict may be made "[w]hether or not a motion to direct a verdict has been made or overruled."[7]
 {¶ 16} In Canton v. Harris, the United States Supreme Court recognized that a municipality's failure to train may be the basis for liability under Section 1983, Title 42, U.S.Code.[8] The principle was one on which the federal courts of appeals had agreed.[9] The Supreme Court also held that "[t]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[10]
 {¶ 17} To succeed on their claim against the city, the Sosas needed to demonstrate that the police training was inadequate, that the inadequate training amounted to deliberate indifference on the city's part, and that inadequate training was the cause of their injuries.[11] We conclude that they did not present sufficient evidence that Cincinnati's training was inadequate.
 {¶ 18} Larry Danaher, the expert witness for the Sosas, reviewed the actions taken by the police officers. He pointed out various ways in which he believed the officers had acted improperly. According to Danaher, the police officers had acted recklessly in arresting Mauro Sosa and had used excessive force. When asked whether the officers were properly trained, Danaher responded, "Well, there is an old saying we use in law enforcement, you play the way that you are trained." But he was unable to point to specific lapses in the training that the officers had received. In response to a question from the city, Danaher stated, "[O]bviously, either they did not receive the proper training or ignored the training that they did have through the police department." Later, he stated, "I believe that if there was a policy, a good policy, in place and [the officers] were well-trained, they would not have acted the way they did that night."
 {¶ 19} Absent evidence about the training that the officers did or did not receive, Danaher's testimony was not sufficient to demonstrate that the city's training program was inadequate. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."[12] Because the Sosas did not identify a training deficiency that caused the alleged deprivation of Mauro's rights, we conclude that reasonable minds could come to but one conclusion: that there was not a failure to train upon which the city's liability could be based. The trial court therefore properly granted judgment notwithstanding the verdict in the city's favor. The second assignment of error is overruled, and we affirm the judgment of the trial court. Judgment affirmed.
Hildebrandt, P.J., and Hendon, J., concur.
[1] Harlow v. Fitzgerald (1982), 457 U.S. 800, 818, 102 S.Ct. 2727.
[2] Pray v. Sandusky (C.A.6, 1995), 49 F.3d 1154, 1158.
[3] Cook v. Cincinnati (1995), 103 Ohio App.3d 80, 85, 658 N.E.2d 814.
[4] Id. at 86.
[5] Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 679, 693 N.E.2d 271.
[6] Id.
[7] Civ.R. 50(B).
[8] Canton v. Harris (1989), 489 U.S. 378, 388, 109 S.Ct. 1197.
[9] Id.
[10] Id.
[11] Id. at 391.
[12] Id. at 391.