[Cite as *Rural Bldg. of Cincinnati L.L.C. v. Mercer*, 2017-Ohio-7226.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| RURAL BUILDING OF CINCINNATI LLC, | : | APPEAL NO. C-160760 |
| | | TRIAL NO. A-1400901 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| DONALD MERCER, | : | |
| and | | |
| | : | |
| JACK CAMERON, | | |
| Defendants-Appellants. | : | |


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  August 16, 2017


*Cohen, Todd, Kite, & Stanford, LLC,* and *Michael R. Schmidt*, and *Rafii & Nazarian, LLP,* and *David L. Monroe*, for Plaintiff-Appellee,

*Schroeder, Maundrell, Barbiere & Powers*, *Lawrence E. Barbiere* and *Katherine L. Barbiere*, for Defendants-Appellants.

**DETERS, Judge.**

{¶1} Defendants-appellants Donald Mercer and Jack Cameron appeal a decision of the trial court denying their summary-judgment motion seeking immunity under Ohio's Political Subdivision Tort Liability Act, R.C. Chapter 2744. Because we determine that Mercer and Cameron are employees of a political subdivision entitled to immunity under R.C. 2744.03(A)(6), we reverse the judgment of the trial court.

### Facts and Procedural History

{¶2} Plaintiff-appellee Rural Building of Cincinnati, LLC, ("RBOC") owns a building in the village of Evendale (the "Village") on Medallion Drive. In 2010, RBOC successfully bid on a contract lease with the federal government for use of RBOC's Medallion Drive property by the Immigration and Customs Enforcement Division ("ICE"). After the contract bidding had ended, but prior to an official award of the contract, an unsuccessful bidder on the contract, Josh Hausman, contacted the Village's chief building official, Mercer. Hausman sent an email to Mercer describing himself as a potential purchaser of the property on Medallion Drive, and inquiring as to zoning for the building. Hausman's email did not provide detail regarding the proposed building use, except to state that the building would be used by ICE, and that it would have "multiple detention cells." Hausman also attached to the email a zoning-compliance form describing the intended use of the Medallion Drive property as a "public safety facility" with "detention facility." Mercer marked the zoning certificate "disapproved."

{¶3} In December 2010, after the lease had been officially awarded to RBOC, Hausman contacted Mercer again with another zoning-compliance form. The

2

form stated that the use of the building would be an ICE office with "detention cells," a "sally port," other "high security items," and "a perimeter fence as well as a barrier * * * so no car can drive into the building." Mercer drafted a letter to Hausman, which stated that Mercer denied Hausman's request for the proposed "Detention Facility" under the Village's zoning code.

{¶4}   It is unclear whether Mercer ever sent the denial letter to Hausman, because shortly after Hausman sent Mercer the second zoning-compliance form, Mercer learned that Hausman had been misrepresenting himself, and that Hausman had no affiliation with RBOC or the subject property. Mercer then had multiple conversations with federal-government officials, who explained that the proposed use of RBOC's building would not be a "jail," but would be an office building with four, small temporary holding rooms. The holding rooms would not have bars, and ICE would not detain individuals overnight. The building would have a perimeter fence, but it would not have razor wire. An ICE official wrote a letter to Mercer and Cameron, who worked as an assistant to the mayor at the time. The letter stated as follows:

> The ICE facility proposed in Evendale, OH will employ a staff of approximately 45, most of whom are in supervisory, administrative, or support roles. In addition to standard office space, the 26,000 SF facility will house an employee fitness center and lockers, kitchen/break room for staff, numerous file/storage rooms necessary to support the agency's work, a large reception area, and various administrative/IT spaces.

The facility will have four detainee hold rooms, designed as a temporary holding area only. Detainees will generally be interviewed/processed in no more than eight hours, and then returned to county police facilities. Detainees are supervised by ICE personnel at all times.

{¶5} At the request of Mercer, RBOC's principal, Jon Spears, filed another zoning-compliance form, which quoted the letter from the ICE official. By letter dated January 21, 2011, Mercer denied RBOC's proposed use. In the letter, Mercer stated that the Village's zoning code did not permit a "Detention Facility" within the zoning district.

{¶6} RBOC filed an appeal of Mercer's decision to the Board of Zoning Appeals ("BZA"), and RBOC also requested a use variance. The Village's mayoral office released a public notice in advance of the BZA meeting. The public notice described that RBOC sought a use variance because the property to be occupied by ICE would "include a holding area for individuals detained by the U.S. Customs Officials[,]" and that the current zoning code does not permit such holding facilities.

{¶7} In March 2011, several property owners in the Village held a community meeting regarding the upcoming BZA hearing on RBOC's zoning request. Cameron attended the meeting and answered questions. According to Cameron, he encouraged citizens to contact the BZA through correspondence or attend the BZA hearing to voice their concerns. In the days after the meeting, area business owners wrote to Cameron regarding RBOC's building. In an email to a concerned business owner in the area, Cameron wrote that Mercer had denied the proposed use "because it contains holding rooms which effectively make it a jail." The email further clarified

that the proposed use would be an office for ICE "to interrogate and question illegal aliens picked up by local authorities[,]" that no overnight detention would occur, and that it would house approximately 45 employees.

{¶8} The BZA held a public hearing on RBOC's application, and the BZA ultimately denied RBOC's appeal. Without the zoning approval, RBOC lost the ICE contract opportunity, and the federal government moved on to the next lowest bidder.

{¶9} RBOC brought the instant complaint against Mercer and Cameron, raising several claims. The trial court granted a motion to dismiss some of those claims on statute-of-limitations grounds; therefore, the only remaining claims in dispute are: (1) intentional interference with a constitutional right against both Mercer and Cameron, (2) intentional interference with a contract against Mercer only, and (3) negligence against Mercer only.

{¶10} Mercer and Cameron filed a motion for summary judgment on the issue of immunity, arguing that as employees of a political subdivision, they are immune from liability on the remaining claims in RBOC's complaint. The trial court determined that factual issues existed regarding the immunity issue, and therefore declined to provide immunity to Mercer and Cameron on the remaining claims. Mercer and Cameron appeal.

**The Political Subdivision Tort Liability Act**

{¶11} In a single assignment of error, Mercer and Cameron argue that the trial court erred in denying their summary-judgment motion on political-subdivision immunity grounds.

{¶12} With regard to this court's jurisdiction to decide this appeal, R.C. 2744.02(C) provides that "an order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability * * * is a final order." The Ohio Supreme Court has held that an order overruling a summary-judgment motion in which a political subdivision or its employees request immunity is a final order for purposes of R.C. 2744.02(C). *See Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus. Moreover, R.C. 2744.02(C) permits an appeal by a political subdivision or its employees, even when the order makes no determination pursuant to Civ.R. 54(B). *Sullivan v. Anderson Twp.*, 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, syllabus. Therefore, the trial court's order from which Mercer and Cameron appeal is a final, appealable order, even though the order made no final determination as to immunity and even though it contains no Civ.R. 54(B) certification.

{¶13} With regard to this court's standard of review of a trial court's decision denying a Civ.R. 56(C) motion, a court of appeals conducts a de novo review of the law and facts. *Hubbell* at ¶ 21; *Jones v. Norwood*, 1st Dist. Hamilton No. C-120237, 2013-Ohio-350, ¶ 34. Summary judgment under Civ.R. 56 is appropriate when (1) no genuine issues of material fact exist; (2) the movant is entitled to judgment as a matter of law; (3) and it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmovant, and that conclusion is adverse to the nonmovant. *Jones* at ¶ 34, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). With this standard in mind, we now turn to the merits of Mercer and Cameron's appeal.

6

**Definition of Employee under R.C. 2744.03**

{¶14} Political-subdivision immunity in R.C. Chapter 2744 covers political subdivisions and their employees. *See* R.C. 2744.02(A)(1) ("[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."); R.C. 2744.03(A)(6). An "employee" is defined as

> an officer, agent, employee, or servant, whether or not
> compensated or full-time or part-time, who is
> authorized to act and is acting within the scope of the
> officer's, agent's, employee's, or servant's employment
> for a political subdivision. 'Employee' does not include
> an independent contractor * * *. 'Employee' includes
> any elected or appointed official of a political
> subdivision.

R.C. 2744.01(B).

{¶15} The parties do not dispute that Cameron is an employee of the Village, but the parties do dispute whether Mercer, the chief building official, is an employee. R.C. 2744.01(B) defines an employee to include an "appointed official," but does not include an "independent contractor." The question is whether an individual can be both an appointed official and an independent contractor for purposes of political-subdivision immunity. The trial court determined that an appointed official could also be an independent contractor, and therefore the trial court analyzed whether Mercer is an employee or an independent contractor under the common-law, right-

7

to-control test. *See Bostic v. Connor*, 37 Ohio St.3d 144, 146, 524 N.E.2d 881 (1988). The trial court ultimately determined that issues of fact existed as to whether Mercer was an employee or independent contractor, and therefore the trial court denied Mercer the benefit of R.C. Chapter 2744 immunity at that stage of the litigation.

{¶16} On appeal, Mercer argues that the trial court erred in applying the right-to-control test. First, Mercer argues that he is an appointed official. Second, Mercer argues that even under the right-to-control test, he would not qualify as an independent contractor as a matter of law.

{¶17} The first question we must answer is whether an appointed official qualifies as an "employee" under R.C. 2744.01(B), regardless of whether that official also meets the definition of an independent contractor. We answer the question in the affirmative. As one court has succinctly described the term "employee" in R.C. 2744.01(B): it has "a broad meaning and includes officials or persons who act on behalf of the city in a representative capacity other than as an independent contractor." *Crossley v. Esler*, 10th Dist. Franklin No. 94APE04-497, 1994 WL 649962, *2 (Nov. 17, 1994). If appointed officials could also be independent contractors under R.C. 2744.01(B), then those officials would not receive any immunity under R.C. Chapter 2744, even for actions related to their official duties. *See Santel v. Rector*, 12th Dist. Butler No. CA2010-10-018, 2011-Ohio-1996, ¶ 12 (immunity unavailable to an individual who is not an employee of a political subdivision). Courts have assumed that an elected or appointed official of a political subdivision is an employee under R.C. 2744.01(B), without discussing the official's status as an independent contractor. *See, e.g., Brewer v. West Chester Twp. Planning & Zoning Dept.*, 12th Dist. Butler No. CA2002-01-026, 2002-Ohio-4483, ¶

8

19, fn. 2; *Blankenship v. Enright*, 67 Ohio App.3d 303, 310, 586 N.E.2d 1176 (10th Dist.1990).

{¶18} Mercer testified that he is an appointed official under Evendale Municipal Code 1440.02, which creates the position of "Chief Building Official." RBOC does not dispute Mercer's assertion that he is an appointed official. Therefore, because no genuine issue of material fact exists as to whether Mercer is an appointed official, we determine that Mercer is an employee under R.C. 2744.03(A)(6) as a matter of law.

## Official versus Individual Capacities

{¶19} Mercer and Cameron next argue that the trial court erred in determining that they had been sued in their individual capacities, and not their official capacities. For purposes of political-subdivision immunity, a suit against a political-subdivision employee in his or her official capacity is treated the same as a suit against the political subdivision itself, and a three-tiered analysis applies. *See R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939, 1 N.E.3d 833, ¶ 8, 43 (1st Dist.); *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, paragraph two of the syllabus. The three-tiered analysis affords a political subdivision a general grant of immunity, which is subject to five, limited exceptions, and then allows for reinstatement of immunity for certain defenses. *See* R.C. 2744.02; R.C. 2744.03. For claims against individual employees, the three-tiered analysis does not apply, and a separate immunity analysis applies under R.C. 2744.03(A)(6). *See R.K.* at ¶ 44; *Lambert* at ¶ 11. Whether an action is brought against a political-subdivision employee in an individual or official capacity requires a review of the language used in the complaint. *See Lambert* at paragraph one of the syllabus. For purposes of this

appeal, we assume, without deciding, as did the trial court, that Cameron and Mercer were sued in their individual capacities.

### Employee Immunity Under R.C. 2744.03(A)(6)

{¶20} As employees of a political subdivision, Mercer and Cameron argue that they are entitled to immunity from RBOC's claims under R.C. 2744.03(A)(6). R.C. 2744.03(A)(6) provides in part that an employee is immune from liability unless "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code."  The parties agree that this dispute involves R.C. 2744.03(A)(6)(b).

{¶21} As to the conduct described in R.C. 2744.03(A)(6)(b), "malicious purpose" has been defined as "the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct." *Jones*, 1st Dist. Hamilton No. C-120237, 2013-Ohio-350, at ¶ 42. "Bad faith" is a " 'dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another.' " *Id.*, quoting *Cook v. City of Cincinnati*, 103 Ohio App.3d 80, 90-91, 658 N.E.2d 814 (1st Dist.1995).

{¶22} The Ohio Supreme Court has defined wanton misconduct under R.C. 2744.03(A)(6)(b) as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d

266, paragraph three of the syllabus. Finally, reckless conduct is "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus.

{¶23} We now consider whether Mercer and Cameron are entitled to immunity under R.C. 2744.03(A)(6), keeping in mind that an analysis under R.C. 2744.03(A)(6) is separate from an analysis of the merits of the plaintiff's underlying claims. *See Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 10.

{¶24} As to RBOC's claims against Mercer for negligence, Mercer is entitled to immunity because "R.C. 2744.03(A)(6)(b) does not reach these allegations of merely negligent conduct." *Jones*, 1st Dist. Hamilton No. C-120237, 2013-Ohio-350, at ¶ 45; *see O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 74 ("recklessness" under R.C. 2744.03(A)(6)(b) requires more than negligence). Therefore, RBOC's negligence claim against Mercer fails as a matter of law.

{¶25} As to RBOC's claim against Mercer for intentional interference with a contract, RBOC's complaint states that the claim is against "MERCER AS INDEPENDENT CONTRACTOR." Therefore, it is questionable whether this claim survives after our determination that Mercer is an employee under R.C. Chapter 2744. Nevertheless, we determine that with regard to RBOC's claims against Mercer for intentional interference with a contract and malicious interference with a constitutional right, the record does not support RBOC's allegations that Mercer acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

11

According to RBOC's appellate brief, Mercer acted maliciously, in bad faith, or in a wanton and reckless manner by "spread[ing] the false rumor" that RBOC's building would be used by ICE as a jail or "detention facility." RBOC further contends that Mercer knew his letter denying RBOC's request would be public record, and that the information he put in the letter was false.

{¶26} The record does not support RBOC's contention that Mercer acted recklessly, let alone with a malicious purpose, in bad faith, or in a wanton manner. RBOC suggests that Mercer committed misconduct by relying on Hausman's false representations. RBOC points out that Mercer originally sought to deny Hausman's zoning-compliance form because the proposed site would be used as a "Detention Facility," and that Mercer continued to deny RBOC's zoning request after discovering Hausman's identity for the same reason that the site would be used as a "Detention Facility." Mercer testified that he believed that a "significant use" of the proposed ICE facility would be for detaining individuals, and therefore the Village's zoning code did not permit such use. Mercer testified that he reached his conclusions based upon the information he had received from government officials and RBOC, and the Village's zoning code, as well as Ohio's building code. Nothing in the record suggests that Mercer acted unreasonably in his application and interpretation of the zoning code, nor does the record support the allegation that Mercer disseminated "false" information to the public. In fact, the members of the BZA came to the same conclusion as Mercer with respect to RBOC's zoning request, further supporting Mercer's testimony that the denial of RBOC's request was nothing more than the product of Mercer's good-faith efforts to do his job. Therefore, we determine that

12

Mercer is entitled to immunity on RBOC's claims for intentional interference with a contract and malicious interference with a constitutional right.

{¶27} As to RBOC's claim for malicious interference with a constitutional right against Cameron, RBOC alleges that Cameron acted recklessly by "orchestrating community outrage." Specifically, RBOC argues that Cameron failed to correct the public notice regarding RBOC's upcoming BZA hearing, and represented to the members of the public that the proposed facility would be used as a jail.

{¶28} The evidence in the record shows that Cameron wrote an email to a business owner in which Cameron stated that Mercer had denied the proposed use "because it contains holding rooms which effectively make it a jail." However, within that same email, Cameron clarified that the proposed use would be an office for ICE "to interrogate and question illegal aliens picked up by local authorities[,]" that no overnight detention would occur, and that it would house approximately 45 employees. RBOC's owner, Spears, testified that the members of the public who had written objection letters or who had attended the BZA hearing and voiced their complaints had formed their opinions in the community meeting, which Cameron had attended. Spears testified that he believed Mercer and Cameron had "inflamed the neighboring community." But, Spears testified that he did not attend the community meeting, and that he had not spoken to anyone about what had been said at that meeting. Therefore, we determine that Cameron did not act with a malicious purpose, in bad faith, or in a wanton or reckless manner with regard to RBOC's zoning request. As a result, Cameron is entitled to immunity under R.C. 2744.03(A)(6).

## Conclusion

{¶29} In conclusion, for purposes of RBOC's complaint, we determine that Mercer and Cameron are employees of the Village entitled to political-subdivision immunity under R.C. 2744.03(A)(6). Therefore, Mercer and Cameron are entitled to summary judgment. As a result, we sustain the sole assignment of error, and we reverse the judgment of the trial court and remand the cause with instructions to enter judgment in favor of Mercer and Cameron.

Judgment reversed and cause remanded.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.